Kenwood GAUERKE and Elisabeth Gauerke, his wife, Plaintiffs-Respondents and Cross-Appellants-Petitioners,

v.

Robert W. ROZGA and Ann C. Rozga, his wife, Defendants and Second-Third Party Plaintiffs,

UNITED STATES FIDELITY & GUARANTEE COMPANY, and Gudim Realty, Inc., Defendants,

ROBERT FROST REALTY, INC., and St. Paul Fire & Marine Insurance Company, Defendants and Third-Party Plaintiffs-Appellants, Cross-Respondents and Cross-Petitioners,†

Marvin SCHULZ, Defendant and Third-Party Defendant-Appellant, Cross-Respondent and Cross-Petitioner,

Joseph CAZ and Geraldine Caz, Second-Third Party Defendants.

Supreme Court

*No. 81–613. Argued January 4, 1983.—Decided April 26, 1983.*

(Also reported in 332 N.W.2d 804.)

† Motion for reconsideration denied, without costs, June 7, 1983.

For the plaintiffs-petitioners there was a brief (in court of appeals) and oral argument by *Dennis Burgy*, Eagle River.

For cross-respondents-cross-petitioners there was a brief (in court of appeals) by *Thomas Terwilliger* and *Terwilliger, Wakeen, Piehler, Conway & Klingberg*, Wausau, and oral argument by *Thomas Terwilliger*.

LOUIS J. CECI, J.   A jury found the defendants-appellants, Robert Frost Realty, Inc., and Gudim Realty, Inc., liable on a theory of strict responsibility for the misrepresentations of Frost's agent, Marvin Schulz, regarding the acreage and the amount of road and river frontage of resort property purchased by Kenwood and Elisabeth Gauerke. Robert Frost Realty, Inc., its insurer, and Schulz appealed from the judgment awarding damages to the Gauerkes. On appeal, Frost asserted that the trial court erred in (1) giving a strict responsibility instruction on a broker's liability, (2) refusing to add "without an investigation" to the pattern instruction, as requested, (3) refusing to submit special verdict questions comparing the negligence of the Gauerkes with the strict responsibility of Gudim and Frost, (4) refusing to submit special verdict questions comparing the

negligence of the co-defendants with the strict liability of Gudim and Frost, and (5) refusing to submit special verdict questions on the third-party defendants' liability to indemnify Frost. The court of appeals reversed the trial court on the fifth issue, but otherwise affirmed the trial court's disposition of the case,[1] including the trial court's refusal to submit the issue of punitive damages to the jury, which was raised as an issue on cross-appeal by the Gauerkes. We affirm the court of appeals decision.

In 1976, Robert and Ann Rozga listed their resort hotel for sale with Gudim Realty, Inc. The Rozgas advised Gudim that they had five and one-half acres of land with approximately six hundred feet of frontage on the Eagle River and about the same amount of frontage on Highway 70. When the Rozgas advised Gudim as to the amount of frontage and total acreage they had, they apparently told Gudim that their knowledge concerning the amount of land was based upon what the former owners, Joseph and Geraldine Caz, had told them when they (the Rozgas) purchased the property. The Rozgas gave the same explanation to Schulz, a Robert Frost agent. Gudim prepared a specification sheet and mailed it to the Rozgas, requesting that they check the accuracy of the information. Mr. Gudim had viewed the land, but had not verified the acreage and frontage figures. The Rozgas returned the sheet with their approval, without changing the frontage and acreage information.

The Gauerkes, who were looking for hotel-resort property, contacted Robert Frost Realty, Inc. and were referred to Marvin Schulz. Schulz, who was aware that the Rozgas were attempting to sell their resort, contacted

---

[1] The court of appeals did not specifically address the question of whether the trial court should have submitted special verdict questions comparing the negligence of the co-defendants (in particular, the Rozgas) with the strict liability of Gudim and Frost.

Gudim Realty. Gudim mailed the specification sheet to Schulz, who gave it to the Gauerkes. Schulz had removed the Gudim logo from the top of the sheet and substituted a Robert Frost Realty card. The Gauerkes then went to northern Wisconsin and viewed the property, unaccompanied by Schulz. During this viewing, the Rozgas advised the Gauerkes that they had approximately five and one-half acres of land and six hundred feet of river frontage.

The Gauerkes then contacted Schulz and signed an offer to purchase, reserving the right of further inspection. On October 10, 1976, the Gauerkes again inspected the property, this time accompanied by Schulz. At that time, Schulz asked for and obtained from the Rozgas a warranty which stated that "sellers warrant above figures to be true and accurate." Both Schulz and the Rozgas testified that Schulz advised the Rozgas that to warrant something meant to say that it was true to the best of one's knowledge. The heading on this warranty sheet read "Motels by Gudim." Kenwood Gauerke testified that this was the first time they (the Gauerkes) had heard of Gudim Realty.

The Gauerkes purchased the property for $125,000. The closing took place on December 27, 1976. Two years later, when they were in the process of selling the property, the Gauerkes discovered that the property actually contained only two and seven-tenths acres and had only four hundred fifteen feet of river frontage and two hundred seventy-eight feet of highway frontage.

On June 22, 1979, the Gauerkes commenced this action for damages for the misrepresentations allegedly made by the defendants. Prior to trial, the Rozgas, the Cazes, and United States Fidelity and Guarantee Company (Gudim's insurer) had obtained *Pierringer* releases from the Gauerkes. Thus, only the three Frost parties (Frost, its insurer, and Schulz, hereinafter "Frost") and Gudim

were defendants when the trial began on November 3, 1980. However, the three parties who had obtained *Pierringer* releases were third-party defendants to Frost's cross-claim for indemnity.

The jury was instructed on theories of both negligent misrepresentation and strict responsibility for misrepresentation. The special verdict included a series of questions pertaining to each theory. It instructed the jurors to go on to the negligence questions only if they had not found strict responsibility. The jury found liability based on strict responsibility on the part of Gudim and Frost; accordingly, the special verdict questions concerning the negligence of the parties remained unanswered. The jury apportioned negligence (based on a strict responsibility theory) forty percent to Frost, sixty percent to Gudim Realty, and zero percent to the Rozgas. The damages were found to be $10,000.

Gudim Realty then settled with the plaintiffs and was ordered dismissed from the case on December 1, 1980, but remained a defendant to Frost's cross-claim. Thus, when judgment was entered on December 30, 1980, Frost was held liable to pay $4,000.

Frost appealed, and the Gauerkes cross-appealed, contending that it was error for the trial court to refuse to submit the question of punitive damages to the jury. The court of appeals decided that the jury instructions and special verdicts were insufficient to allow the jury to determine Frost's right to indemnity and it, therefore, remanded the case to the trial court on this issue. It otherwise affirmed the circuit court.

The court of appeals rejected Frost's argument that the doctrine of strict responsibility was not applicable and should not have been submitted to the jury because Schulz could not have known the dimensions of the property without an investigation. The court held that "[s]trict liability applies where a party implies that he

has complete knowledge of the fact represented when he is in a position to know."

Frost also asserted that the pattern jury instruction, Wis. J.I.—Civil No. 2402 (1969)[2] did not correctly state the law. Frost had requested that the words "without investigation" be added to the instruction. The court of appeals agreed with the trial court that this was unnecessary, stating, "The liability of one who makes a representation of fact does not depend upon the actual source of his information."

The court also rejected Frost's argument that the jury should have been required to ascertain the negligence of the plaintiffs in failing to independently verify the dimensions of the property and that such negligence should have been compared to the defendants' strict responsibility. The court of appeals reasoned that "in strict liability the loss is to fall on the innocent defendant rather than the innocent plaintiff. . . ."

However, the court of appeals agreed with Frost that the jury should have been required to determine the liability of Gudim and the Rozgas for misrepresenting the acreage and frontage to Frost's agent, Schulz. It held that any damages due Frost from the Cazes, the Rozgas, and Gudim should be removed from the judgment due the Gauerkes because the Gauerkes had assumed this liability by releasing the indemnitors.

Finally, the court rejected the Gauerkes' argument on cross-appeal that punitive damages should have been

---

[2] Wis. J. I.—Civil No. 2402 (1969) states in part:

"Thirdly, that the defendant made the representation as a fact based on his own personal knowledge, or in circumstances in which he necessarily ought to have known the truth or untruth of the statement. Plaintiff must prove that the defendant represented the fact from his personal knowledge, or was so situated that he either had particular means of ascertaining the pertinent facts, or his position made possible complete knowledge and his statements fairly implied that he had it."

submitted to the jury, because this objection was not preserved by a motion after the verdict and because the moral culpability of the defendant is immaterial in strict responsibility cases. Petitioners do not raise the issue of punitive damages in this appeal.

As the court of appeals noted, there are three classes of actionable misrepresentation in Wisconsin. A cause of action for misrepresentation can be based on intent, negligence, or strict responsibility. *Whipp v. Iverson*, 43 Wis. 2d 166, 168 N.W.2d 201 (1969).[3] On this review,

[3] "The bases of responsibility in these three classifications of torts have at least three elements in common: (1) The representation must be of a fact and made by the defendant; (2) the representation of fact must be untrue; and (3) the plaintiff must believe such representation to be true and rely thereon to his damage. The classifications differ in several respects. In intentional deceit the defendant must either know the representation is untrue or the representation was made recklessly without caring whether it was true or false and with intent to deceive and induce the plaintiff to act upon it to the plaintiff's pecuniary damage. In strict responsibility, the misrepresentation must be made on the defendant's personal knowledge or under circumstances in which he necessarily ought to have known the truth or untruth of the statement and the defendant must have an economic interest in the transaction. Intent to deceive and good-faith belief in the truth of the representation are immaterial. In this classification the speaker is supposed to possess complete knowledge of the facts or could normally be expected to know them *without investigation*. Harper and Mc-Neely, *A Synthesis of The Law of Misrepresentation*, 22 Minn. L. Rev. (1938), 939, at Note 112, p. 988. A person is therefore justified in expecting infallibility as to the representations of fact. In negligence, the defendant need only fail to exercise ordinary care in making a misrepresentation or in ascertaining the facts but like other cases of negligence, it requires a duty of care or a voluntary assumption of a duty.

"These three types of torts have other important differences in respect to measure of damages, burden of proof, and the right of the plaintiff to rely upon the representations. *See Harweger v. Wilcox* (1962), 16 Wis. 2d 526, 114 N.W.2d 818; Annot. (1967), *'Out of pocket' or 'benefit of bargain' as proper rule of damages for fraudulent representations inducing contract for the transfer of*

several questions concerning the application of the doctrine of strict responsibility for misrepresentation are presented.

## JURY INSTRUCTION ON STRICT RESPONSIBILITY

Frost argues that the theory of strict responsibility should not have been submitted to the jury, because that theory is only applicable where the defendant could normally be expected to know the facts represented to be true without investigation. In the alternative, Frost contends that the words "without investigation" should have been added to the standard jury instruction, Wis. J. I.—Civil No. 2402, so that the pertinent section read as follows:

"Thirdly, that the defendant made the representation as a fact based on his own personal knowledge, or in circumstances in which he necessarily ought to have known the truth or untruth of the statement *without an investigation.*"

In support of its position, Frost cites *Whipp v. Iverson,* 43 Wis. 2d 166, which post-dated the 1969 standard jury instruction on this particular element of strict responsibility. In describing the tort of strict responsibility for misrepresentation, this court in *Whipp* stated that "the misrepresentation must be made on the defendant's personal knowledge or under circumstances in which he necessarily ought to have known the truth or untruth of the statement. . . ." *Id.* at 170. However,

---

*property,* 13 A.L.R.3d 875." 43 Wis. 2d 169–70 (Emphasis added; footnote omitted.)

This language from *Whipp* was later quoted by this court in *Ollerman v. O'Rourke Co., Inc.,* 94 Wis. 2d 17, 25, 288 N.W.2d 95 (1980); however, the issues in *Ollerman* involved intentional and negligent misrepresentation, rather than strict responsibility for misrepresentation.

the court cited a 1938 *Minnesota Law Review* article[4] for the further explanation that, under strict responsibility, "the speaker is supposed to possess complete knowledge of the facts or could normally be expected to know them without investigation." *Id.* The Law Notes for Trial Judges in the standard jury instructions use the *Whipp* language.

Frost then goes on to argue that the doctrine of strict responsibility is not applicable in this case, because its agent, Schulz, could not have known the dimensions of the property without an investigation.

While we agree with Frost that there is a discrepancy between the language of the standard jury instruction and *Whipp v. Iverson,* we cannot accept Frost's contention that a defendant is only strictly responsible for misrepresentations made concerning facts which he would normally be expected to know without investigation.[5] First, we think that the *Minnesota Law Review* article, which was referred to in *Whipp,* does not clearly explain the significance of the investigation factor.[6] Even more

---

[4] Harper and McNeely, *A Synthesis of The Law of Misrepresentation,* 22 Minn. L. Rev. 939 (1938).

[5] As the court of appeals noted, a realtor may be held strictly liable for a misrepresentation of fact, even though the representation was based upon information received in the course of his employment. *See, Stevenson v. Barniweck,* 8 Wis. 2d 557, 563, 99 N.W.2d 690 (1959). It is for the jury to determine whether a misrepresentation of fact was actually made.

[6] We feel that the following language from the *Minnesota Law Review* article does not answer the question of whether a defendant must normally be expected to know the information without an investigation in order to be held strictly responsible:

"[I]n every case of liability for innocent representation, the misinformation was one of fact 'susceptible of accurate knowledge,' or an expression of opinion capable of adequate factual support. Moreover, the statements were made either by one who had peculiar means of ascertaining pertinent data or by one whose position made

compelling, we believe, is the rationale behind the doctrine of strict responsibility for misrepresentation.

The policy behind strict responsibility for misrepresentation is stated in the Law Notes for Trial Judges in Wis. J.I.—No. 2400, Misrepresentation: Bases for Liability and Damages:

"Strict responsibility for misrepresentation, the second basis, applies to those situations where public opinion calls for placing the loss on the innocent defendant rather than on the innocent plaintiff. In *Stevenson* [*v. Barniweck*, 8 Wis. 2d 557, 99 N.W.2d 690 (1959)], the court (citing Prosser) required the presence of two factors before liability would be found: (1) a representation made as of defendant's own knowledge, concerning a matter about which he purports to have knowledge, so that he may be taken to have assumed responsibility as in the case of warranty, and (2) a defendant with an economic interest in the transaction into which the plaintiff enters so that defendant expects to gain some economic benefit. In other words, strict responsibility applies in those circumstances which 'indicate that the speaker either had particular means of ascertaining the pertinent facts, or his position made possible complete knowledge and the statements fairly implied that he had it.' Therefore, the speaker ought to have known or else ought not to have spoken."

We agree with the court of appeals that the applicability of the doctrine of strict responsibility does not depend

possible complete knowledge and whose statements fairly implied that he had it.

". . . [T]he cases involving innocent misrepresentation disclose situations in which the defendant professes complete knowledge of the facts or normally could be expected to know them without any special investigation. . . . In the one case, the information is given and accepted 'as of the personal knowledge' of the supplier. In the other, it is given and accepted as the reasonable belief of the person supplying it after a reasonably careful and skillful investigation." 22 Minn. L. Rev. 939, 987–88 (1938).

upon the actual source of the speaker's knowledge; rather, this element is satisfied if the speaker professes or implies personal knowledge. The other key element is the buyer's justifiable reliance on the statement. If the fact represented is something that one would not expect the speaker to know without an investigation, this might be a factor in determining whether there was justifiable reliance on the part of the buyer. Accordingly, since the "without investigation" factor is not an element of strict responsibility for misrepresentation, we hold that the trial court was correct in not adding such language to the standard jury instruction.

### COMPARATIVE NEGLIGENCE AND STRICT RESPONSIBILITY

Frost argues that the trial court erred in not including special verdict questions concerning the negligence of the plaintiffs and comparing any negligence on their part to the strict responsibility of the defendants.[7] The court of appeals affirmed the trial court on this issue, reasoning that in strict responsibility, the loss is to fall on the innocent defendant rather than the innocent plaintiff, who justifiably relied on the representation. We agree.

Our holding that there should be no inquiry about and comparison of the plaintiff buyer's negligence with the

[7] Frost also contends that the trial court erred in not including special verdict questions concerning the negligence of the co-defendant Rozgas (the sellers) and in not comparing any negligence on their part to the strict responsibility of the real estate brokers. We do not reach the merits of this argument in this opinion, since it appears that Frost failed to timely request that the special verdict be in such a form. Section 805.13(3), Stats.; *Gyldenvand v. Schroeder*, 90 Wis. 2d 690, 280 N.W.2d 235 (1979); *Goldman v. Bloom*, 90 Wis. 2d 466, 280 N.W.2d 170 (1979); *Terpstra v. Soiltest, Inc.*, 63 Wis. 2d 585, 218 N.W.2d 129 (1974).

defendant broker's strict responsibility is based on the principle that if a plaintiff is justified in relying upon a representation of a defendant, the plaintiff is not required to make an independent investigation before acting on this reliance. Therefore, even though a plaintiff's conduct might in other circumstances be negligent, such conduct is not inquired into in a strict responsibility situation. The plaintiff is viewed as being innocent, because he justifiably relied on the representation of the defendant, who was supposed to possess complete knowledge of the facts. Since the plaintiff's reliance was justified, he was under no obligation to do anything else to protect himself.

Wis. J.I.—Civil No. 2402 states in pertinent part:

"The plaintiff is not required before relying upon the representation of fact to make an independent investigation."

Further explanation is provided by Prosser, *The Law of Torts* (4th ed. 1971):

"It seems clear that, as in other cases of strict responsibility, there is a more or less conscious policy of placing the loss upon the innocent defendant rather than the innocent plaintiff who has been misled, in cases where public opinion seems to call for such a result.[8]

". . .

"It is now held that assertions of fact as to the quantity or quality of land or goods sold, the financial status of corporations, and similar matters including commercial transactions, may justifiably be relied on without investigation, not only where such investigation would be burdensome or difficult, as where land which is sold lies at a distance, but likewise where the falsity of the representation might be discovered with little effort by means easily at hand." [At 712, 717–18.]

[8] This court has adopted the principle set forth in Prosser. *See, Stevenson v. Barniweck*, 8 Wis. 2d 557.

We agree with the plaintiffs that in a case such as the one before us, where the jury has determined that the defendants are strictly responsible, the plaintiffs should not be penalized for reliance which was justified. Therefore, we hold that the trial court was correct in not including questions in the special verdict comparing the negligence of the plaintiffs to the defendants' strict responsibility.

### LIABILITY OF CO-DEFENDANTS FOR MISREPRESENTATIONS MADE TO FROST

The jury was not asked to determine whether the codefendants should be liable to Frost for the misrepresentations they made to Frost. The trial court refused Frost's request for the supplemental verdicts because it felt the *Pierringer* releases completely removed the Cazes and the Rozgas from the case. The court of appeals reversed and remanded on this issue.

Frost was damaged in the amount of $4,000 plus taxable costs as a result of the judgment entered against it. It is apparent that if Frost was so harmed through the fault of another, it should be able to recoup its losses to the extent it did not itself cause them.

The *Pierringer* releases obtained from the Gauerkes by Gudim and the Rozgas do not preclude Frost from recovering such amounts. A *Pierringer* release permits some defendants to settle out of court while reserving the plaintiff's right against nonsettling tortfeasors. *Pierringer v. Hoger,* 21 Wis. 2d 182, 124 N.W.2d 106 (1963). The Gauerkes assumed the released defendants' share of liability arising out of the sale of the property, including liability for contribution or indemnity, in return for a stated sum. Thus, any damages due Frost from the Rozgas and Gudim for their separate torts of misrepre-

sentation should be removed from the judgment due the Gauerkes because the Gauerkes have assumed this liability by releasing the co-defendants.

Therefore, as the court of appeals stated:

"Even though not all of the defendants were parties at trial, it is necessary to determine the amount that would satisfy their obligation, if any, to indemnify Frost. This amount is deemed satisfied by the *Pierringer* releases, and Frost should be required to pay only the remaining amount."

The trial court's failure to submit the requested special verdict questions prevented this amount from being subtracted from Frost's liability for misrepresentation. The court of appeals was correct in remanding this matter to the trial court for a determination of whether Frost is entitled to recover for any misrepresentation by Gudim and the Rozgas concerning the amount of acreage and frontage. Accordingly, we affirm the court of appeals decision.

*By the Court.*—The decision of the court of appeals is affirmed.