IMARK INDUSTRIES, INC., Plaintiff-Respondent-
Cross Appellant-Petitioner,

v.

ARTHUR YOUNG & COMPANY, Defendant-Third
Party Plaintiff-Appellant-Cross Respondent,†

Joel B. KONICEK and David H. James, Third
Party Defendants-Respondents-Cross
Appellants-Petitioners.

Supreme Court

*No. 86–1125. Argued November 1, 1988.—Decided March 3,
1989.*

(Also reported in 436 N.W.2d 311.)

† Motion for reconsideration denied April 24, 1989, with costs.

606

608

For the plaintiff-respondent-cross appellant-petitioner there were briefs by *John P. Scotellaro, Stephen J. O'Neil,* and *Bell, Boyd & Lloyd,* Chicago, Illinois, and *Andrew O. Riteris* and *Michael, Best & Friedrich,* Milwaukee, of counsel, and oral argument by *Mr. Scotellaro* and *Mr. O'Neil.*

For the third party defendant-respondents-cross appellants-petitioners there were briefs by *Alan M. Levy, Claude J. Krawczyk,* and *O'Neil, Cannon & Hollman, S.C.,* all of Milwaukee, and oral argument by *Mr. Levy.*

For the defendant-third party plaintiff-appellant-cross respondent there was a brief by *Barbara J. Janaszek* and *Whyte & Hirschboeck, S.C.,* Milwaukee, and *Eugene R. Erbstoesser,* associate general counsel, and *D. Jeffrey Hirschberg,* special counsel, both of New York, New York, and oral argument by *Mr. Erbstoesser.*

Amicus curiae briefs were filed by *Jeffrey J. Kassel* and *LaFollette & Sinykin,* Madison, for Wisconsin Insurance Alliance; and *Gerald J. Bloch,* Milwaukee, for Wisconsin Academy of Trial Lawyers.

LOUIS J. CECI, J. This case is before the court on petition for review of a decision of the court of appeals, *Imark Industries, Inc. v. Arthur Young & Co.,* 141 Wis. 2d 114, 414 N.W.2d 57 (Ct. App. 1987), which affirmed in part, reversed in part, and remanded with directions a judgment of the circuit court for Milwaukee county, Elliot N. Walstead, reserve circuit judge. The circuit court accepted part one of the jury's special verdict which found that Arthur Young & Company (Arthur Young) had negligently misrepresented the financial status of National Control Systems, Inc. (NCS) in an audit Arthur Young prepared for NCS which was relied on by Imark Industries, Inc. (Imark)

and awarded Imark $425,800 in damages from Arthur Young. The circuit court also accepted part two of the jury's special verdict which found that Joel B. Konicek (Konicek), David H. James (James), and Carl L. Zaar, Jr. (Zaar), NCS's president, vice-president, and controller, respectively, had made intentional misrepresentations to Arthur Young and awarded Arthur Young $106,450 in damages from Konicek and James.

Three issues are presented for review. The first issue is whether the court of appeals misinterpreted *Fleming v. Threshermen's Mutual Ins. Co.,* 131 Wis. 2d 123, 388 N.W.2d 908 (1986), and thereby created a conflict with *Pierringer v. Hoger,* 21 Wis. 2d 182, 124 N.W.2d 106 (1963), by holding that a covenant not to sue has the same effect as a *Pierringer* release when given to an intentional tortfeasor. The second issue is whether the special verdict in this case is inconsistent because the jury in part one of the special verdict found that Arthur Young was negligent in its preparation of the audited financial statements of NCS, while at the same time the jury in part two of the special verdict found that Arthur Young was justified in its reliance upon certain misrepresentations given to it by Konicek, James, and Zaar. The third issue is whether the special verdict is incomplete because the jury in part two of the special verdict set the damages for the intentional misrepresentations but failed to apportion the fault among the persons who were specifically responsible.

We conclude that the court of appeals misinterpreted *Fleming* by holding that a covenant not to sue has the same effect as a *Pierringer* release when given to an intentional tortfeasor. In addition, we find that the special verdict in this case is consistent because the fact that the jury in part one of the special verdict found that Arthur Young was negligent in its preparation of

610

the audited financial statements of NCS is reconcilable with the fact that the jury in part two of the special verdict found that Arthur Young was justified in its reliance upon certain intentional misrepresentations given to it by Konicek, James, and Zaar. Finally, we hold that part two of the special verdict is incomplete because the special verdict left unanswered the amount of Arthur Young's liability found in part one of the special verdict which is attributable to Arthur Young's negligent reliance on certain intentional misrepresentations by Konicek, James, and Zaar. Therefore, we reverse the decision of the court of appeals in part, vacate the circuit court's judgment in part, and order a new trial limited to determining, for the purpose of indemnification, what portion of Arthur Young's liability to Imark for negligence is attributable to Arthur Young's negligent reliance on certain intentional misrepresentations by Konicek, James, and Zaar.

## I.

The facts of this case are as follows. In 1981, Konicek and James were president and vice-president, respectively, of NCS, a company engaged in the manufacture and installation of computerized security and energy management systems. In June, 1981, NCS hired Arthur Young to perform a review of NCS's financial statements for the nine months ending May 31, 1981, and an audit of NCS's financial statements for the fiscal year ending August 31, 1981. Arthur Young audited NCS's 1981 financials in September and October, 1981, and issued an opinion dated October 23, 1981.

Also in 1981, NCS hired the investment banking firm of Dain Bosworth, Inc. (Dain Bosworth) to solicit

venture capital investors. In November, 1981, Dain Bosworth contacted Imark concerning investing in NCS. As part of an investment package, Dain Bosworth gave Imark a "venture placement" memorandum which included a review of NCS's financial statements and audited financial statements prepared by Arthur Young. The report indicated that NCS had a profit of $48,000 and shareholder equity of $315,000 as of August 31, 1981. In addition, the audited financial statements reflected that NCS's projects were eight-five percent complete as of August 31, 1981. A footnote to the audited financials revealed that the uncompleted 1980 projects completed in 1981 produced less revenue than originally estimated. As a result, the 1981 operating revenues were reduced by approximately $390,000.

On January 6, 1982, a meeting was held among Imark, NCS, and Dain Bosworth. At this meeting, NCS disclosed it had lost several hundred thousand dollars since August 31, 1981. In addition, the terms of a possible acquisition by Imark of fifty percent of NCS's stock for $950,000 were discussed.

On January 27, 1982, Imark and NCS met again to discuss the terms of the proposed deal. NCS acknowledged that first-quarter losses of fiscal year 1982 were $276,000 and stated that another $222,000 in losses were expected. Imark requested NCS's first-quarter 1982 financial statements. According to NCS, losses totaling between $700,000 and $750,000 were expected for the six months ending February 28, 1982. At this meeting, an acquisition by Imark of fifty-five percent of NCS's stock for $1,000,000 and a loan to NCS of $410,000 were discussed.

On January 28, 1982, Imark received NCS's unaudited first-quarter financial statements, which confirmed that as of November 30, 1981, NCS had lost at

least $490,000. On January 29, 1982, Imark executed an agreement to purchase fifty-five percent of NCS's outstanding shares for $1,000,000 and to provide NCS with an interim loan of $410,000. While the closing of the deal was set for mid-March, Imark made the first installment of $150,000 on the loan on January 29, 1982. The Imark board of directors approved the deal on January 30, 1982. Assuming a worst-case scenario of a six-month loss of $676,000, Imark determined that NCS would remain a viable entity after Imark made its investment. On February 5, 1982, Imark made the second installment of $100,000 on the loan, and one week later the third and final installment of $160,000 was paid.

At the meeting to close the deal on March 19, 1982, NCS tendered its unaudited financial statements for the period ending February 28, 1982, which showed a six-month loss of $1,235,000. Since Imark had anticipated losses of only $676,000, Imark refused to close the deal and demanded that NCS repay the $410,000 it had loaned to NCS. In October of 1982, NCS went bankrupt without repaying any portion of Imark's loan.

In April and May of 1983, Imark issued covenants not to sue to Konicek and James for the expressed purpose of obtaining interviews from Konicek and James in regard to the audit performed by Arthur Young. After completing its investigation, Imark decided to sue Arthur Young for negligent misrepresentation based on Arthur Young's audit of NCS's 1981 financial statements. In its complaint, Imark alleged that Arthur Young negligently performed its review of the interim financial statements and its audit of the year-end financial statements and, in doing so, failed to uncover the grossly understated estimated expenditures necessary to complete the projects and the concomitant

overstated revenues and gross profits. Imark alleged that it had relied on NCS's financial statements, as audited by Arthur Young, in making its decision to invest in and loan money to NCS. Arthur Young later filed a third-party complaint against Konicek and James of NCS for fraud after Arthur Young discovered that they had misrepresented facts and withheld documents from Arthur Young's auditors so NCS's financial statements would "look good."

Following trial, the jury found that Arthur Young was liable to Imark for $425,800 in damages because of the negligent misrepresentations made in its opinion letter or the financial statements which Imark had relied on.[1] Consequently, judgment was entered in favor

[1]Part one of the special verdict provides as follows:

Question No. 1: Do you find that the audited financial statements of NCS, or the opinion letter, as prepared by Arthur Young, were inaccurate in some material way?

ANSWER: _____Yes_____

If you have answered Question No. 1 "yes," then answer these questions:

Question No. 2: Do you find that the inaccuracies in the audited financial statements or the opinion letter were the result of Arthur Young's negligence?

ANSWER: _____Yes_____

If you have answered Question No. 2 "yes," then answer this question:

Question No. 3: Do you find that Imark relied on the accuracy of the audited financial statements or the opinion letter in making its decision to loan money to NCS?

ANSWER: _____Yes_____

Question No. 4: If you have answered the preceding question "yes," do you find that Imark was negligent in relying upon the audited financial statements or opinion letter of Arthur Young?

of Imark against Arthur Young in the amount of $425,800. The jury found Arthur Young seventy-five percent at fault, Konicek ten percent at fault, James ten percent at fault, and Zaar, NCS's controller at the time of the audit who was not a party to the suit, five percent at fault. On Arthur Young's third-party fraud claim, the jury found that Konicek, James, and Zaar intentionally made material misrepresentations of fact to Arthur Young as to the information provided during the audit, and that Arthur Young justifiably relied on these misrepresentations.[2] Judgment was entered in favor of

ANSWER: No

Question No. 5: Assuming the total fault which caused Imark's injury to be 100%, what percentage of the fault do you attribute to:

 (A) Young? ANSWER: 75%

 (B) Imark? ANSWER: 0%

 (C) James? ANSWER: 10%

 (D) Konicek? ANSWER: 10%

 (E) Zaar? ANSWER: 5%

You must answer this question regardless of how you have answered the previous questions:

Question No. 6: What sum of money would fairly and reasonably compensate Imark for its out of pocket loss?

ANSWER: 425,800.00

[2]Part two of the special verdict provides in part as follows:

Question No. 18: Do you find, by clear and convincing proof, that Konicek or James or Zaar intentionally made material misrepresentations of facts to Arthur Young as to the information provided during the 1981 audit of NCS?

ANSWER: Yes

Arthur Young against Konicek and James in the amount of $106,450.

Question No. 19: If you answered yes to Question No. 18, then answer this question: Do you find, by clear and convincing proof, that Konicek, James or Zaar made such representations knowing them to be untrue; or recklessly without caring whether they were true or untrue?

ANSWER: _____Yes_____

Question No. 20: If you answered yes to Question No. 19, then answer this question: Which persons made such intentional misrepresentations?

(A) Konicek? _____Yes_____

(B) James? _____Yes_____

(C) Zaar? _____Yes_____

Question No. 21: If you answered yes to Question No. 20 as to any person, then answer this question: Do you find, by clear and convincing proof, that Konicek or James or Zaar made such representations with the intent to deceive and induce Arthur Young to act upon them?

ANSWER: _____Yes_____

Question No. 22 : If you answered yes to Question No. 21, then answer this question: Which persons made such representations?

(A) Konicek? _____Yes_____

(B) James? _____Yes_____

(C) Zaar? _____Yes_____

Question No. 23: If you answered yes to all or any portion of the preceding questions, then answer this question: Did Arthur Young justifiably rely on such representations to its pecuniary damage?

ANSWER: _____Yes_____

Question No. 24: If you answered yes to all the preceding questions, then answer this question: What sum of money will fairly and reasonably compensate Arthur Young for its reliance on the representations, and which third party defendant or defendants is responsible for that injury?

ANSWER: _____$ 106,450.00_____

## II.

Arthur Young raised seven issues before the court of appeals. First, Arthur Young argued that the circuit court erred in refusing to instruct the jury that in a negligent misrepresentation case, the plaintiff must prove justifiable reliance. Second, Arthur Young maintained that the circuit court made erroneous discovery and trial rulings based on its misreading of *Citizens State Bank v. Timm, Schmidt & Co.*, 113 Wis. 2d 376, 335 N.W.2d 361 (1983). Third, Arthur Young contended that Imark was barred from recovery because its reliance was unjustifiable and unreasonable as a matter of law, based on Imark's failure to conduct a proper inquiry after receiving notice that Arthur Young's representations may be incorrect. Fourth, Arthur Young argued that public policy under the *Timm* decision precluded Arthur Young from being held liable in this case. Fifth, Arthur Young maintained that the reasoning in *Timm* is flawed, and, therefore, the case should be overruled. Sixth, Arthur Young contended that the circuit court erroneously awarded Imark preverdict interest. Finally, Arthur Young argued under *Fleming,* which was decided after judgment was entered in this case, that Arthur Young as a negligent tortfeasor was relieved of liability because Imark provided the intentional tortfeasors with covenants not to sue, or, in the alternative, the negligent tortfeasor can only be held liable for its proportionate share.

Imark cross-appealed and argued that it was entitled to recover preverdict interest from the date of the loss at market interest rates. In addition, Konicek and James cross-appealed and argued that because the

verdict was inconsistent and incomplete, there should be a new trial on all issues.

The court of appeals reversed the circuit court's decision on two issues. First, the court of appeals concluded that full liability for Imark's damages should be assessed against Konicek and James based on their intentional misrepresentations, thus freeing Arthur Young of any liability. The court of appeals noted that this court in *Fleming* held that a *Pierringer* release of an intentional joint tortfeasor operates to absolve a negligent tortfeasor of liability to a plaintiff because the negligent tortfeasor's right to indemnity from the intentional joint tortfeasor becomes a right to indemnify from the plaintiff. The court of appeals then held, "Although in this case Imark executed covenants not to sue with Konicek and James, we perceive of no different result whether the release of the intentional tortfeasor is obtained by a *Pierringer* release or, as here, a covenant not to sue." *Imark,* 141 Wis. 2d at 137. Consequently, the court of appeals held that the circuit court erred in granting judgment to Arthur Young for indemnification for only $106,450 against Konicek and James, and the court of appeals remanded the matter to the circuit court to enable the circuit court to grant judgment to Imark for the full amount of its losses against the intentional tortfeasors. Second, the court of appeals concluded that the circuit court erred in awarding preverdict interest. The court of appeals held that preverdict interest is prohibited in cases where the existence of multiple defendants prevents any single defendant from knowing prior to trial the precise amount of his ultimate liability.

In addition, the court of appeals found that the jury verdict was not inconsistent when it found that Arthur Young had negligently misrepresented NCS's financial condition and that Arthur Young had justifiably relied on the false representations made by Konicek, James and Zaar. The court of appeals reasoned that the inconsistency "argument was laid to rest by our supreme court when it stated that a negligent tortfeasor, such as [Arthur Young], has a right to indemnity from an intentional joint tortfeasor, for if this policy were not in place, intentional tortfeasors such as Konicek, James and Zaar would not be deterred from conduct which society considers to be substantially more egregious than negligence." *Id.* at 139. Finally, the court of appeals held that the court need not address the incomplete verdict issue because Konicek and James are directly liable to Imark for their intentional misrepresentations and Arthur Young is released of its liability for negligent misrepresentation.

## III.

██ The first issue before this court is whether the court of appeals misinterpreted *Fleming,* thereby creating a conflict with *Pierringer* by holding that a covenant not to sue has the same effect as a *Pierringer* release when given to an intentional tortfeasor. This issue presents a question of law; therefore, we will review this issue *de novo* without deference to the decisions of the lower courts. *Bell v. County of Milwaukee,* 134 Wis. 2d 25, 30, 396 N.W.2d 328 (1986).

In *Fleming,* this court held that a negligent joint tortfeasor has a right to indemnity from an intentional joint tortfeasor. *Fleming,* 131 Wis. 2d at 130.

> Were we to allow a negligent tortfeasor only a right to contribution from an intentional joint tortfeasor, the intentional tortfeasor effectively would receive the benefit of contribution from the negligent tortfeasor, in direct conflict with the established law in this state. While this approach allows a defendant who is causally negligent to escape from liability in some circumstances, we believe that shifting the full responsibility for the loss to the intentional tortfeasor serves the policy of deterring conduct which society considers to be substantially more egregious than negligence.

*Id.*

Having concluded in the first part of *Fleming* that a negligent joint tortfeasor has a right to indemnity from an intentional joint tortfeasor for any sums the negligent joint tortfeasor is obligated to pay the plaintiff in satisfaction of the negligent joint tortfeasor's liability, we addressed the issue of how the plaintiff's *Pierringer* release of the intentional joint tortfeasor affected the negligent joint tortfeasor's liability. The plaintiff argued that the *Pierringer* release of the intentional joint tortfeasor only affected his rights against the intentional joint tortfeasor and did not foreclose the negligent joint tortfeasor's right to seek indemnity from the intentional joint tortfeasor. Because the negligent joint tortfeasor retains his right to seek indemnity, the plaintiff argued that he should be allowed to recover his damages from the negligent joint tortfeasor. We disagreed and held that a *Pierringer* release of an intentional joint tortfeasor operates to absolve a negligent joint tortfeasor of liability to a plaintiff who has released the intentional joint tortfeasor because the negligent joint tortfeasor's right to indemnity from the intentional joint tortfeasor becomes a right to indemni-

ty from the plaintiff. *Id.* at 125. *See also Gauerke v. Rozga,* 112 Wis. 2d 271, 283–84, 332 N.W.2d 804 (1983).

In the case before this court, Arthur Young maintains, and the court of appeals held, that the holding in *Fleming* is applicable not only in a situation where the plaintiff has given an intentional joint tortfeasor a *Pierringer* release, but also in a situation where the plaintiff has given the intentional joint tortfeasor a covenant not to sue. We disagree.

As between parties to a *Pierringer* release or a covenant not to sue, there is no difference in the end result whether a release or a covenant not to sue is used. *Loy v. Bunderson,* 107 Wis. 2d 400, 420, 320 N.W.2d 175 (1982), quoting 66 Am. Jur. 2d, *Release,* sec. 2, p. 679 (1973). In either case, the settling joint tortfeasor is protected from claims by the plaintiff.

The difference between a *Pierringer* release and a covenant not to sue lies in the rights of the nonsettling joint tortfeasor. *Id.* A *Pierringer* release operates as a satisfaction of that portion of the plaintiff's cause of action for which the settling joint tortfeasor is responsible, while at the same time reserving the balance of the plaintiff's cause of action against a nonsettling joint tortfeasor. *Pierringer,* 21 Wis. 2d at 188–89. A *Pierringer* release provides that the plaintiff will assume or satisfy that portion of the liability that is determined to be the responsibility of the settling joint tortfeasor. *Jackson v. Ozaukee County,* 111 Wis. 2d 462, 465, 331 N.W.2d 338 (1983); *Pierringer,* 21 Wis. 2d at 184–85. Consequently, we have held that a *Pierringer* release operates to impute to the plaintiff whatever liability in contribution or indemnity the settling joint tortfeasor may have to the nonsettling joint tortfeasor and to bar

subsequent contribution or indemnity actions the non-settling joint tortfeasor might assert against the settling joint tortfeasor. *Fleming,* 131 Wis. 2d at 131; *Gauerke,* 112 Wis. 2d at 283–84.

On the other hand, a covenant not to sue is not a satisfaction of a portion of a plaintiff's cause of action, but is merely an agreement to discharge the settling joint tortfeasor with a reservation of rights of the full cause of action against the nonsettling joint tortfeasor. *Pierringer,* 21 Wis. 2d at 186–87; *State Farm Mutual Automobile Ins. Co. v. Continental Casualty Co.,* 264 Wis. 493, 497–98, 59 N.W.2d 425 (1953); *see also Loy,* 107 Wis. 2d at 420. A covenant not to sue does not provide that the plaintiff will assume or satisfy that portion of the liability that is determined to be the responsibility of the settling joint tortfeasor. Consequently, we have held that a covenant not to sue does not affect a nonsettling joint tortfeasor's right to contribution from a settling joint tortfeasor because under a covenant not to sue there is not settlement within the scope of accord and satisfaction, and the plaintiff's whole cause of action remains against the nonsettling joint tortfeasor. *Pierringer,* 21 Wis. 2d at 187; *Heimbach v. Hagen,* 1 Wis. 2d 294, 298, 83 N.W.2d 710 (1957); *State Farm Mutual,* 264 Wis. at 497–98.

Similarly, we hold today that a covenant not to sue does not affect a nonsettling joint tortfeasor's right to indemnity from a settling joint tortfeasor because under a covenant not to sue there is no settlement within the scope of accord and satisfaction, and the plaintiff's whole cause of action remains against the nonsettling joint tortfeasor. Consequently, we find that the court of appeals erred by holding that a covenant not to sue has

the same effect as a *Pierringer* release when given to an intentional joint tortfeasor. Therefore, we reverse the court of appeals' conclusion that full liability for Imark's damages should be assessed against Konicek and James as a matter of law.

IV.

The second issue before this court is whether the special verdict in this case is inconsistent because the jury in part one of the special verdict found that Arthur Young was negligent in its preparation of the audited financial statements, while at the same time the jury in part two of the special verdict found that Arthur Young was justified in its reliance upon intentional misrepresentations given to it by Konicek, James and Zaar. An inconsistent verdict is a term of art used in describing jury answers which are logically repugnant to one another. *Fondell v. Lucky Stores, Inc.,* 85 Wis. 2d 220, 228, 270 N.W.2d 205 (1978). In the event of an inconsistent verdict which is not properly subject to a waiver of claim by the objecting party, and which is not rectified by a resubmission under direction to the jury, a new trial is required. *Westfall v. Kottke,* 110 Wis. 2d 86, 100, 328 N.W.2d 481 (1983).

Konicek and James argue that the special verdict is inconsistent and contrary to the law and must be reversed, with a new trial ordered.[3] Konicek and James maintain that if the jury found that Arthur Young was negligent in failing to detect the fraud, Arthur Young could not have justifiably relied on the misrepresentations that the jury found were made by Konicek, James,

---

[3]Arthur Young proposes this argument in the alternative to its *Fleming* argument.

and Zaar. Conversely, if Arthur Young was justified in relying on the misrepresentations, it could not have been negligent in detecting the fraud.

We disagree. It is perfectly consistent for the jury to find that Konicek, James and Zaar made intentional misrepresentations of certain facts upon which Arthur Young justifiably relied but that the majority of the audit errors resulted from Arthur Young's negligent reliance on other intentional misrepresentations of Konicek, James and Zaar or from Arthur Young's negligence in the performance of other audit procedures unaffected by any intentional misrepresentations of Konicek, James, and Zaar.

Furthermore, the record before this court supports this conclusion. For example, Arthur Young alleged that certain invoices were not shown to its auditors, yet the auditors admitted that they did not complete an open invoice review which might have uncovered the invoices in question. Arthur Young reviewed open invoices only through September 25, 1981, notwithstanding the fact that generally accepted auditing principles and Arthur Young's own auditing manual require that open invoices be reviewed through the completion of the fieldwork, in this case, October 23, 1981. In addition, Imark presented evidence that Arthur Young failed to apply proper auditing standards in recognizing as revenue the amount of a disputed change order. This was a pure auditing issue which did not involve any claim of misrepresentation. Consequently, we hold that the jury verdict is not inconsistent when the jury found in part one of the special verdict that Arthur Young was negligent in its preparation of the audited financial statements, while at the same time the jury in part two of the special verdict found that

Arthur Young was justified in its reliance upon intentional misrepresentations given to it by Konicek, James, and Zaar.

We note, however, that the circuit court erred when it included not only Imark and Arthur Young but also Konicek, James, and Zaar, the intentional tortfeasor, in the comparison of negligence question, question number five in part one of the special verdict. The jury's apportionment of fault in question number five reflects the extent to which each party is to blame for the $425,800 in damages sustained by Imark due to the negligence of Arthur Young and the intentional misrepresentations by Konicek, James, and Zaar. The jury should have been instructed only to compare the fault of Konicek, James, and Zaar with that of Imark and Arthur Young if the jury found that Konicek, James, and Zaar had acted in a negligent manner, rather than in an intentional manner. The law of the state of Wisconsin does not allow the comparison of fault of a negligent tortfeasor with that of an intentional tortfeasor, because there can be no contribution for damages in such a circumstance. *Fleming,* 131 Wis. 2d at 129–30. However, as the court of appeals held, this error was harmless because the jury did not find Imark contributorily negligent in any percentage. Nor did it find that Konicek, James, and Zaar acted negligently. Therefore, all comparative causal harm to Imark for negligent misrepresentation would have been the responsibility of Arthur Young but for the jury's finding of intentional misrepresentations on the part of Konicek, James, and Zaar in part two of the special verdict. Consequently, notwithstanding this error, we conclude that the special verdict is consistent.

## V.

The third issue before this court is whether the special verdict is incomplete because the jury in part two of the special verdict set the damages for the intentional misrepresentations but failed to apportion the fault among the persons who were specifically responsible. This court may order a new trial in whole or in part in the event of an incomplete verdict. *City of Franklin v. Badger Ford Truck Sales,* 58 Wis. 2d 641, 650–57, 207 N.W.2d 866 (1973).

Konicek and James maintain that the special verdict as rendered by the jury is incomplete because the jury failed to provide a complete answer to Question 24 in part two of the special verdict. Question 24 reads as follows: "What sum of money will fairly and reasonably compensate Arthur Young for its reliance on the representations, and which third party defendant or defendants is responsible for that injury?" The jury's response was "$106,450." At Question 22 in part two of the special verdict, the jury found that Zaar, a nonparty to this litigation who was a controller at NCS during the audit, had made material misrepresentations to Arthur Young. Therefore, Konicek and James argue that a possible answer to the second part of Question 24 in part two of the special verdict is that only one or neither of the third-party defendants, Konicek and James, was responsible for Arthur Young's damages. Konicek and James maintain that it is certainly possible that the only misrepresentations which caused Arthur Young's damages were those made by Zaar.

We find that there was no need to identify the persons responsible for the intentional misrepresenta-

tions in Question 24 of part two of the special verdict because the jury had already identified the individuals responsible by its answers to the questions preceding Question 24. In Question 18 of part two of the special verdict, the jury found by clear and convincing proof that intentional material misrepresentations of facts were made. In Questions 19 and 20 of part two of the special verdict, the jury found that Konicek, James, and Zaar had each made such representations knowing them to be untrue. In Questions 21 and 22 of part two of the special verdict, the jury found that Konicek, James, and Zaar had each made such misrepresentations with the intent to deceive. Finally, in Question 24 of part two of the special verdict, the jury found that Arthur Young had relied on such misrepresentations to its pecuniary damage. Therefore, the jury had already identified the persons responsible for the intentional misrepresentations. Consequently, it was not necessary for the jury to again identify, in Question 24, those persons responsible.

Moreover, since each party found guilty of intentional misrepresentation is liable for the entire amount without a right of contribution, it was not necessary to allocate the damage award among the intentional tortfeasors because each intentional tortfeasor is accountable for the entire damage award. *Fleming,* 131 Wis. 2d at 129; *Jacobs v. General Accident Fire & Life Assurance Corp.,* 14 Wis. 2d 1, 5, 109 N.W.2d 462 (1961); *Ellis v. Chicago & Northwestern Railway Co.,* 167 Wis. 392, 409, 167 N.W. 1048 (1918).

Although we have determined that the special verdict is not incomplete for the reason advanced by Konicek and James, we nevertheless find that part two of the special verdict is incomplete because the verdict

fails to determine what portion of Arthur Young's liability to Imark for negligent misrepresentation is attributable to Arthur Young's negligent reliance on certain intentional misrepresentations by Konicek, James, and Zaar. Consequently, the verdict leaves no way in which the issue of indemnification can be determined.

As demonstrated earlier, the evidence supports the conclusion that Arthur Young justifiably relied on certain misrepresentations of Konicek, James, and Zaar and suffered $106,450 in pecuniary damages. This allocation is reflected in part two of the jury's special verdict and in the jury's allocation of twenty-five percent of the total fault causing Imark's injury to Konicek, James, and Zaar in Question 5 of part one of the special verdict.

In addition, the evidence supports the conclusion that Arthur Young was also negligent by relying on certain intentional misrepresentations by Konicek, James, and Zaar. As such, the jury should have been asked to determine what portion of Arthur Young's liability for negligent misrepresentation, found in part one of the special verdict, is attributable to Arthur Young's negligent reliance on certain intentional misrepresentations by Konicek, James, and Zaar and what part of Arthur Young's liability found in part one of the special verdict is attributable to negligence in the performance of other audit procedures unaffected by any intentional misrepresentations of Konicek, James, and Zaar. If the jury concluded that a portion of Arthur Young's liability to Imark was due to Arthur Young's negligent reliance on certain intentional misrepresentations of Konicek, James, and Zaar, Arthur Young would be entitled to indemnity from Konicek, James, and

Zaar for that portion of its liability. *Fleming,* 131 Wis. 2d at 130.

Therefore, we conclude that part two of the special verdict is incomplete, and a new trial is directed, limited to determining, for the purposes of indemnification, what portion of Arthur Young's liability to Imark for negligent misrepresentations is attributable to Arthur Young's negligent reliance upon certain intentional misrepresentations made by Konicek, James, and Zaar.

*By the Court.*—The decision of the court of appeals is reversed in part, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.