Lawrence OMERNIK and Bonita Omernik, Plaintiffs-Appellants,

v.

Bob BUSHMAN, Re-Max Professionals, Inc., and Citizens Marine National Bank, Defendants-Respondents.

Court of Appeals

*No. 88–1332. Submitted on briefs May 5, 1989.—Decided June 8, 1989.*

(Also reported in 444 N.W.2d 409.)

For the plaintiffs-appellants the cause was submitted on the brief of *Jared Redfield,* of Stevens Point.

For the defendants-respondents the cause was submitted on the brief of *E. John Buzza* and *David A. Ray,* and *Terwilliger, Wakeen, Piehler & Conway, S.C.,* of Stevens Point.

Before Gartzke, P.J., Dykman and Eich, JJ.

GARTZKE, P.J.   Lawrence and Bonita Omernik appeal from a summary judgment dismissing their complaint against Citizens Marine National Bank. The ultimate question is one of law: whether the owner who sells a building "as is" and makes no express or implied warranty of fitness is liable to the buyer for structural defects in the building of which neither the seller nor the buyer had knowledge. We conclude that the owner is not liable, and for that reason we affirm.

Section 802.08, Stats., controls summary judgment. Trial and appellate courts apply the same summary judgment methodology. Our review is therefore *de novo.*

That methodology has been described in many cases, such as *In re Cherokee Park Plat,* 113 Wis. 2d 112, 116, 334 N.W.2d 580, 582–83 (Ct. App. 1983), and we do not repeat the description here.[1]

Omerniks brought this action against the bank as owner of a home which the bank sold to Omerniks. They joined the bank's real estate agent as a defendant. This appeal does not involve the agent's liability to Omerniks.

The complaint alleges that the bank's real estate agent represented to Omerniks that the home was fundamentally sound and had no structural defects, that Omerniks relied on those representations when they offered to purchase the home, and that they inspected the home and no significant defects were brought to their attention or were obvious. The home has significant structural defects which will require over $14,000 to remedy. The bank's agent violated his express warranty, the bank violated an implied warranty of habitability, and the bank and its agent are liable for the cost of remedying the defects. We conclude that the complaint states a claim against the bank.

The bank's answer denies knowledge of representations by its agent, denies that it made any warranty to the Omerniks and alleges that they were aware of the

---

[1] A comment is appropriate regarding the methodology the trial court employed. The court made formal findings of fact. As we said in *State Bank of La Crosse v. Elsen,* 128 Wis. 2d 508, 515–16, 383 N.W.2d 916, 919 (Ct. App. 1986):

> Findings of fact are unnecessary under and depart from summary judgment methodology. The trial court's task is to determine if a genuine issue exists as to any material fact. Section 802.08(2), Stats. If a factual issue exists, the motion must be denied. If no factual issue exists and the moving party is entitled to a judgment as a matter of law, then the judgment sought must be rendered. *Id.* In either event, denial or grant, the trial court makes no factual findings. The denial or grant is immediate.

condition of the home, agreed to accept it "as is," acknowledged in their offer that the bank made "no implied or express warranties of any kind" and agreed that the bank need not contribute toward repair and improvement costs related to the home. The bank's answer raises a defense. The pleadings raise material issues of fact.

The bank's motion for summary judgment is supported by the affidavit of one of its officers. He asserts that both the bank's listing contract with the real estate agent to sell the home and Omerniks' offer to purchase contain the following clause:

> Seller is a financial institution whose employees have not visited the property. Seller will make the property available for inspection by buyer or buyer's agent upon notice at reasonable times prior to closing. Seller makes no warranties or representations as to the condition of the property and offers the property in "as is" condition.

Omerniks accepted the bank's counteroffer which provided in part,

> Owner-seller has not inhabited property and gives no implied or expressed [sic] warranties of any kind. Buyer understands the home is being purchased in "as is" condition and will be in the same condition as on the date of this offer.

The resulting contract between the parties was subsequently amended by adding that the bank "will not pay any money toward repairs/improvement costs." The officer asserts that neither he nor any employee of the bank had conversations or communications with or made representations to Omerniks regarding the property, except as set forth in the offer, the counteroffer and the amendment.

The bank further supported its motion with excerpts from Omerniks' depositions, both of whom deposed that they had no contacts with anybody from the bank regarding the home. Lawrence Omernik deposed that he had read and understood the "as is" clause but the agent told him not to worry about it. Bonita Omernik deposed that she had read the "as is" clause and was aware this was an "as is" purchase.

The existence of the "as is" clause in the bank's listing contract with its agent restricted the actual authority of the agent against making representations or warranties to prospective buyers regarding the condition of the property. The "as is" clause in the buyer's offer removes any basis for a claim against the bank for breach of warranty on the theory that the agent possessed apparent authority to make such representations or warranties.

■

An "as is" clause in a real estate contract puts the burden upon a buyer to determine the condition of the property purchased. *Cf. Universal Inv. Co. v. Sahara Motor Inn, Inc.,* 619 P.2d 485, 487 (Ariz. Ct. App. 1980) ("as is" clause in contract to purchase real estate implies that property is in some way defective and buyer may not justifiably rely on seller's silence as representation that no defects existed); *Kaye v. Buehrle,* 457 N.E.2d 373, 376 (Ohio Ct. App. 1983) ("as is" clause in real estate contract places risk of defects in property on buyer). According to *Restatement (Second) of Torts* sec. 551 comment j (1977), "[i]f the parties expressly or impliedly place the risk as to the existence of a fact on one party or if the law places it there by custom or otherwise the party has no duty of disclosure."

█

To overcome the effect of the "as is" clause, Omerniks contend that the trend is to allow damages to a buyer for defects which the purchaser could not reasonably discover, regardless whether the seller or its agent fully informed the buyer of the facts or deliberately misled the purchaser. That may be the trend for strict responsibility in tort, but this is an action for breach of warranty. Summary judgment methodology does not permit a plaintiff to rely on a theory not pleaded in the complaint. *C.L. v. Olson,* 143 Wis. 2d 701, 721 n. 13, 422 N.W.2d 614, 621 (1988).

█

For that reason, Omerniks' reliance on *Gauerke v. Rozga,* 112 Wis. 2d 271, 332 N.W.2d 804 (1983), is misplaced. As the Omerniks note, the *Gauerke* court quoted Prosser, *The Law of Torts* sec. 107, at 712, 717–18 (4th ed. 1971): "It seems clear that, as in other cases of strict responsibility, there is a more or less conscious policy of placing the loss upon the innocent defendant rather than the innocent plaintiff who has been misled," and that "[i]t is now held that assertions of fact as to the quantity or quality of land . . . may justifiably be relied on without investigation . . .." *Gauerke,* 112 Wis. 2d at 282, 332 N.W.2d at 809–10. *Gauerke* dealt with strict liability in tort for innocent misrepresentations regarding the size of a parcel and its river and highway frontages.[2]

---

[2] Omerniks' reliance on *Stevenson v. Barwineck,* 8 Wis. 2d 557, 99 N.W.2d 690 (1959), is misplaced for the same reason. *Stevenson* involved an action for strict responsibility and negligence in tort.

Omerniks also cite *McKinnon v. Vollmar,* 75 Wis. 82, 43 N.W. 800 (1889), in which a judgment was rendered in favor of the plaintiff buyer to whom the sellers' agent represented that the land contained 2,200,000 feet of pine. The land contained little or

The affidavit and other proof supporting the bank's motion for summary judgment set forth evidentiary facts admissible in evidence which establish a prima facie defense. We therefore examine Omerniks' affidavit to determine whether genuine issues of fact exist which must be tried.

■

Omerniks state that the bank's agent informed them that the home was structurally sound. They had no way of knowing whether the agent's representation was authorized by the bank. They did not know if the bank was aware of defects in the home. They were aware of the "as is" clause at all times, but they believed, and the agent implied, that the clause covered only defects that they could see or reasonably discover. We conclude that in view of Omerniks' admitted awareness of the "as is" clause, nothing in their affidavit raises a genuine issue of material fact as to whether the bank was bound by its agent's representation or impliedly warranted that the property was habitable. Because the bank established a prima facie defense regarding which no factual issue exists, the bank was entitled to summary judgment dismissing the complaint.

*By the Court.*—Judgment affirmed.

---

no pine timber but neither the sellers nor their agent knew that. The *McKinnon* court said that the plaintiffs were excused for not having verified the accuracy of the statement and, without regard to the question of agency, the plaintiffs were entitled to recover, it being "quite immaterial that the defendants did not know at the time that such statement was false." *Id.* at 91, 43 N.W. at 802. Since the bank made no warranties or representations as to the condition of the property and offered it in "as is" condition, *McKinnon* is not in point.