# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2020AP806 |

| | |
|---|---|
| COMPLETE TITLE: | Allsop Venture Partners III, Alta V. Limited Partnership, Alta Subordinated Debt Partners III LP and State of Wisconsin Investment Board,     Plaintiffs, <br> Terry K. Shockley, Sandy K. Shockley and Shockley Holdings Limited Partnership, Inc.,     Intervenors-Plaintiffs-Appellants-Petitioners, <br> Terence F. Kelly,     Intervenor, <br>    v. <br> Murphy Desmond SC, Robert A. Pasch and Westport Insurance Company,     Defendants-Respondents. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 399 Wis. 2d 841, 967 N.W.2d 309
(2021 – unpublished)

| | |
|---|---|
| OPINION FILED: | June 2, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 17, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Dane |
|   JUDGE: | Richard G. Niess |

JUSTICES:
HAGEDORN, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, DALLET, and KAROFSKY, JJ., joined. ZIEGLER, C.J., filed a dissenting opinion in which ROGGENSACK and REBECCA GRASSL BRADLEY, JJ., joined.

NOT PARTICIPATING:

ATTORNEYS:

For the intervenors-plaintiffs-appellants-petitioners, there were briefs filed by *Robert J. Kasieta* and *Kasieta Legal*

*Group, LLC,* Madison, and *Scott F. Hessell, Bruce S. Sperling, Michael G. Dickler,* and *Sperling & Slater, P.C.,* Chicago. There was an oral argument by *Scott F. Hessell.*

For the defendants-respondents, there was a brief filed by *Terry E. Johnson, Maria del Pizzo Sanders*, and *von Briesen & Roper, S.C.,* Milwaukee. There was an oral argument by *Terry E. Johnson.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2020AP806
(L.C. No. 2009CV4165)

STATE OF WISCONSIN          :      IN SUPREME COURT

**Allsop Venture Partners III, Alta V. Limited Partnership, Alta Subordinated Debt Partners III LP and State of Wisconsin Investment Board,**

      **Plaintiffs,**

**Terry K. Shockley, Sandy K. Shockley and Shockley Holdings Limited Partnership, Inc.,**

      **Intervenors-Plaintiffs-Appellants-Petitioners,**

**Terence F. Kelly,**

      **Intervenor,**

      **v.**

**Murphy Desmond SC, Robert A. Pasch and Westport Insurance Company,**

      **Defendants-Respondents.**

**FILED**

**JUN 2, 2023**

Sheila T. Reiff
Clerk of Supreme Court

---

HAGEDORN, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, DALLET, and KAROFSKY, JJ., joined. ZIEGLER, C.J., filed a dissenting opinion in which ROGGENSACK and REBECCA GRASSL BRADLEY, JJ., joined.

---

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 BRIAN HAGEDORN, J. This is a review of certain evidentiary determinations and other related issues following a jury verdict in a legal malpractice trial. This matter arose when a media company entered into a seemingly tax-friendly sale——dubbed a "midco transaction"——with the assistance of three entities: a tax law firm, an accounting firm, and corporate law firm Murphy Desmond SC (Murphy Desmond). The deal closed and the shareholders received their payout, but the favorable arrangement fell apart when the IRS came after the shareholders for taxes and penalties. Three shareholders (collectively the Shockleys)[1] intervened in litigation against all three assisting entities and brought their own claims of legal malpractice, negligence, and fraud. The Shockleys later settled with the tax and accounting firms, signed a Pierringer release,[2] and amended their complaint to remove the allegations against them. All that remained were legal malpractice-related claims against Murphy Desmond.

---

[1] The three shareholders are Sandy Shockley, Terry Shockley, and Shockley Holdings Limited Partnership, Inc. (Shockley Holdings).

[2] "A Pierringer release operates as a satisfaction of that portion of the plaintiff's cause of action for which the settling joint tortfeasor is responsible, while at the same time reserving the balance of the plaintiff's cause of action against a nonsettling joint tortfeasor." Teske v. Wilson Mut. Ins. Co., 2019 WI 62, ¶11 n.6, 387 Wis. 2d 213, 928 N.W.2d 555 (quoting Imark Indus. Inc. v. Arthur Young & Co., 148 Wis. 2d 605, 621, 436 N.W.2d 311 (1989)); see Pierringer v. Hoger, 21 Wis. 2d 182, 184-85, 124 N.W.2d 106 (1963).

¶2 At trial, Murphy Desmond was found negligent in part, but the circuit court concluded it was entitled to indemnification from the other two entities who had already settled, leaving the Shockleys with no additional recovery. The Shockleys appealed, lost, and now present four issues for our review.

¶3 First, the Shockleys argue the circuit court erred when it admitted into evidence, for the limited purpose of bias or prejudice, the fact that the Shockleys settled with the two other entities.[3] This claim concerns the circuit court's application of Wis. Stat. § 904.08 (2021-22),[4] which generally prohibits the admission of settlement evidence, yet permits its admission in narrow circumstances. We conclude the circuit court did not erroneously exercise its discretion because it applied the appropriate law and reached a reasonable determination that an exception applied under the unique facts of this case, which it reinforced with a limiting instruction to the jury.

¶4 Second, the Shockleys contend a comment in Murphy Desmond's closing argument impermissibly used the settlement evidence to argue liability, and claim the circuit court wrongly denied the Shockleys' post-trial motion for a new trial. We

---

[3] Evidence of settlement amounts—which we have said is not permitted—was introduced by the Shockleys, not Murphy Desmond, and is not challenged here.

[4] All subsequent references to the Wisconsin Statutes are to the 2021-22 version.

3

agree that the circuit court erred in permitting the closing remark, but hold it did not erroneously exercise its discretion when it denied the Shockleys' motion for a new trial.

¶5  Third, the Shockleys maintain the circuit court mistakenly admitted their original, superseded complaint. We conclude that regardless of whether this was error, its admission was harmless.

¶6  Finally, Sandy Shockley and Shockley Holdings assert that Murphy Desmond may still owe damages based on the jury's verdict because its negligence was not attributable to the intentional misrepresentations committed by the two other, now-settled entities. In Fleming v. Thresherman's Mutual Insurance Co., we held that intentional tortfeasors must indemnify negligent parties whose liability is joint, and that a Pierringer release imputes to the plaintiff the settling defendant's liability to nonsettling defendants. 131 Wis. 2d 123, 130-31, 388 N.W.2d 908 (1986). We conclude the evidence at trial confirms that liability was joint. Therefore, in accord with Fleming, Murphy Desmond owes no damages to Sandy Shockley and Shockley Holdings.

¶7  For these reasons, we affirm the decision of the court of appeals.


I.  BACKGROUND

¶8  In 1985, Terry and Sandy Shockley bought a radio station in Madison and rebranded it to oldies, a move that proved wildly successful. That success encouraged them to start

4

a media company, Shockley Communications Corporation (SCC). Over the years, SCC amassed nine radio stations and six TV stations. Terry and Sandy Shockley eventually became minority shareholders and sat on SCC's board of directors. During that time, SCC began working with law firm Murphy Desmond.

¶9 By the early 2000s, SCC pondered selling the company because of the hot media market. But there was a catch: potential buyers wanted to purchase SCC's assets, not its stock. That posed a problem because an asset sale would cause a tax both at the corporate level and at the individual (shareholder) level. That's when accounting firm RSM McGladrey, Inc. (RSM) entered the picture.

¶10 RSM proposed a solution: a "midco transaction" where SCC would sell its stock to a middle company and the middle company would then sell the assets to various interested buyers. After initial discussions with RSM, the shareholders hired tax law firm Curtis, Mallet-Prevost, Colt & Mosle LLP (Curtis Mallet), which advised that the IRS would respect the deal. So, with Murphy Desmond's assistance on the stock sale to the middle company, the board put pen to paper and completed the deal.

¶11 At first, the midco transaction worked. But the IRS wound up rejecting major portions of the transaction and, because SCC no longer existed, levied various taxes and penalties against the shareholders. This led to a drawn-out legal battle the shareholders eventually lost, leaving them with millions of dollars in taxes and penalties owed to the IRS.

¶12 Several shareholders[5] then sued RSM, Curtis Mallet, Murphy Desmond, and several associated individuals. The Shockleys intervened and filed a complaint against all three entities, alleging legal malpractice against Curtis Mallet and Murphy Desmond, negligence against RSM, and fraud against Curtis Mallet and RSM.[6]

¶13 As the suit proceeded, the Shockleys settled with RSM and Curtis Mallet, signing a Pierringer release (more on this below). With the claims against RSM and Curtis Mallet dismissed, the Shockleys amended their complaint. They removed all allegations against RSM and Curtis Mallet and now asserted only a legal malpractice claim against Murphy Desmond and sought declaratory relief on the same grounds.[7] It is this claim that the parties went to trial on and from which this appeal derives.

---

[5] Allsop Venture Partners III Limited Partnership, Alta V Limited Partnership, Alta Subordinated Debt Partners III, L.P., and the State of Wisconsin Investment Board brought the initial suit.

[6] The Shockleys also sued individual employees of Murphy Desmond (Robert A. Pasch), RSM (Stephen A. Schmidt and David Klintworth), and Curtis Mallet (William L. Brinker). The Shockleys asserted the same claims against the employees as their employers. No one argues the legal claims operate differently for the employees and their employers. Thus, we refer only to the three entities for ease of reference.

[7] The Shockleys also brought a direct action claim against Westport Insurance Corporation, which insured Murphy Desmond during the relevant timeframe. This claim is not at issue here.

¶14 Prior to trial, Murphy Desmond filed a motion in limine. As relevant here, the motion asked the circuit court[8] to permit Murphy Desmond to introduce two pieces of evidence: (1) the fact that the Shockleys settled with RSM and Curtis Mallet and (2) the Shockleys' original complaint against all three defendants. The Shockleys filed their own motion, seeking to exclude all evidence of prior settlement and the earlier complaint. The circuit court granted Murphy Desmond's motion, and offered to give the jury a limiting instruction regarding the settlement.

¶15 In light of this ruling, the Shockleys decided to elicit testimony about the settlement during Sandy Shockley's testimony. Before doing so, counsel for the Shockleys asked the circuit court to give the limiting instruction to the jury. The court instructed the jury accordingly, directing them to use the evidence for credibility purposes only, and not for the truth of any claim against Murphy Desmond.

¶16 Counsel for the Shockleys then asked Sandy about the fact of settlement with RSM and Curtis Mallet. However, counsel then proceeded to ask Sandy about the settlement amounts——evidence not addressed in the motions in limine or the circuit court's decision to admit the fact of settlement. Reflecting on this after trial, the circuit court told the Shockleys' counsel: "I almost fell out of my chair when you asked Ms. Shockley how

---

[8] The Honorable Richard G. Niess of the Dane County Circuit Court presided.

much they got in settlement. I don't think any of my rulings put into evidence at issue the amount of the settlement on the Pierringer defendants." Both Murphy Desmond and the Shockleys continued to reference settlement evidence during the trial without objection.

¶17 After both sides rested, closings began. Murphy Desmond's attorney made the following comment during its hour-long closing argument:

> And [the Shockleys' lawyer] should be blushing, because he's the one who got up at the beginning of this trial and talked about this case as if they had never sued -- they had never accused [RSM] and Curtis Mallet of doing anything wrong. . . . Didn't tell you that they'd settled with Curtis Mallet and [RSM]. Didn't tell you they got enormous amounts of money because they're the true culprits here, of course. And didn't tell you that because they settled with them. His clients had night and day changed their allegations to drop all the allegations against those people and now take the posture that he's taking now, that this is, essentially, all our fault. Even though everything that his clients alleged against Curtis Mallet has been proven. Even though the settlement, in my opinion, is an acknowledgment that they've been proven.

The Shockleys objected to this line of argument on the ground that Murphy Desmond was trying to use the settlement evidence to disprove the Shockleys' claims. The circuit court overruled that objection.

¶18 Ultimately, the jury found that RSM, Curtis Mallet, and Murphy Desmond were negligent, as was plaintiff-shareholder Terry Shockley. The jury also determined that RSM and Curtis Mallet committed intentional misrepresentations.

8

¶19 After trial, the Shockleys moved for a new trial, arguing Murphy Desmond's closing argument went over the line. The circuit court denied the motion.

¶20 Murphy Desmond also filed a motion for judgment on the verdict. According to Murphy Desmond, the jury's finding that RSM and Curtis Mallet committed intentional misrepresentations entitled Murphy Desmond to indemnification from them. And, because the Shockleys signed Pierringer releases with RSM and Curtis Mallet, that meant that the Shockelys stood in their shoes for purposes of indemnification, warranting dismissal. Sandy Shockley and Shockley Holdings responded that their damages attributable to the intentional misrepresentations were separate from the damages attributable to the midco transaction and thus, Murphy Desmond was not entitled to indemnification. The circuit court sided with Murphy Desmond, concluding Sandy Shockley and Shockley Holdings had neither alleged nor proven any non-joint liability.

¶21 The Shockleys appealed, and the court of appeals affirmed. Allsop Venture Partners III v. Murphy Desmond SC, No. 2020AP806, unpublished slip op. (Wis. Ct. App. Oct. 21, 2021) (per curiam).[9] We granted the Shockleys' petition for review.

---

[9] In addition to the four issues identified here, the Shockleys also appealed the sufficiency of evidence supporting several jury verdict answers. They did not raise those arguments before us.

9

II.  DISCUSSION

¶22  The Shockleys present four arguments concerning:  (1) admission of settlement evidence; (2) use of the settlement evidence during closing arguments; (3) admission of the Shockleys' superseded complaint; and (4) indemnity.  None entitle the Shockleys to the relief they seek.

A.  Admission of Settlement Evidence

¶23  First, the Shockleys argue that the circuit court erred in admitting the fact of settlement into evidence because it did not fall within any exceptions under Wis. Stat. § 904.08.[10]  We review a circuit court's decision to admit evidence for an erroneous exercise of discretion.  State v. Nieves, 2017 WI 69, ¶16, 376 Wis. 2d 300, 897 N.W.2d 363.  As long as the circuit court "examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion," we will not disturb its ruling.[11]  Martindale v. Ripp, 2001 WI 113, ¶28, 246 Wis. 2d 67, 629 N.W.2d 698.

---

[10] The Shockleys also devote half a sentence to the argument that the probative value of the settlement evidence was substantially outweighed by a danger of unfair prejudice.  But as we have repeatedly said, we do not address undeveloped arguments.  Serv. Emps. Int'l Union, Local 1 v. Vos, 2020 WI 67, ¶24, 393 Wis. 2d 38, 946 N.W.2d 35.

[11] The dissent's warnings that this statutory exception should not be expansively construed are well-taken, but its disregard of the proper standard of review in favor of a more "exacting scrutiny" is the wrong response.  Dissent, ¶66.  In effect, the dissent substitutes its judgment for that of the circuit court.

10

¶24 Wisconsin Stat. § 904.08 establishes the general rule that settlement-related evidence "is not admissible to prove liability for or invalidity of the claim or its amount." But this instruction is not ironclad. A circuit court can admit such evidence if offered "for another purpose, such as proving bias or prejudice of a witness," among other reasons. Id.[12] In Morden v. Continental AG, we explained that § 904.08 is a modification of Federal Rule 408, and its exceptions "should not be expansively construed." 2000 WI 51, ¶85, 235 Wis. 2d 325, 611 N.W.2d 659. While the exceptions should not swallow the rule, neither should the rule always swallow the statutory exceptions. The law explicitly provides that bias or prejudice of a witness can be a permissible basis to admit such evidence. See § 904.08. We have stated that this can be satisfied "by showing that a witness changed his or her testimony or that the posture of a settling party was significantly different as a

---

[12] In full, Wis. Stat. § 904.08 provides:

Evidence of furnishing or offering or promising to furnish, or accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This section does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, proving accord and satisfaction, novation or release, or proving an effort to compromise or obstruct a criminal investigation or prosecution.

11

result of the settlement."[13] Morden, 235 Wis. 2d 325, ¶83. The obvious concern animating this exception is that plaintiffs will "shade their testimony against the interest of the non-settling tortfeasor." 7 Daniel D. Blinka, Wisconsin Practice Series: Wisconsin Evidence § 408.1 (4th ed. 2022).

¶25 The bias and prejudice exception, however, has limits. In Johnson v. Heintz, we explained that while Wis. Stat. § 904.08 permits admission of certain types of settlement-related evidence (such as the fact of settlement), it does not permit admission of settlement amounts. 73 Wis. 2d 286, 300, 243 N.W.2d 815 (1976) ("To allow the admission of details including the amount of settlement as an exception to the rule would defeat the purpose of the rule and render it meaningless."). The amount of settlement is so generally off-limits that its admission has been described as "taboo." Daniel J. LaFave, The Admissibility of Settlement Evidence in Multi-Defendant Tort Cases, Wis. Law., June 1998, at 59; see also Morden, 235 Wis. 2d 325, ¶99 n.15 ("Introducing settlement evidence is a potentially incendiary device, one that could lead the jury to conclude that the plaintiffs have received ample

---

[13] The dissent suggests Morden created a new "significant change in posture" exception to Wis. Stat. § 908.04. Dissent, ¶¶62, 68. It did not. Morden simply says that "the prejudice or bias of a witness"——language straight out of the statute—— might be demonstrated by showing that a witness's testimony could be "significantly different as a result of the settlement." Morden v. Cont'l AG, 2000 WI 51, ¶83, 235 Wis. 2d 325, 611 N.W.2d 659.

compensation from the real malefactors and no further recovery is necessary." (quoting another source)).

¶26 In this case, the central question is whether the circuit court erroneously exercised its discretion when it admitted the fact that the Shockleys settled with RSM and Curtis Mallet. Although the settlement amounts were introduced, it was the Shockleys——not Murphy Desmond——that did so. And the circuit court did not rule that the amount of settlement was admissible in its pre-trial decision. Indeed, the circuit court judge was shocked when the Shockleys brought the amount of settlement into evidence, later saying he "almost fell out of [his] chair." Thus, we limit our review to the fact of settlement and conclude the circuit court reasonably determined that the posture of the Shockleys' arguments changed significantly after the settlement and that some of the plaintiff's witnesses might be biased. This case involved both negligent (Murphy Desmond) and intentional (RSM and Curtis Mallet) tortfeasors; the Shockleys settled only with the latter. The circuit court appeared to recognize the somewhat unusual posture of this case where two of the three central players in the dispute settled out, leaving litigation against solely the third defendant who could now be portrayed as the main culprit. The circuit court was well aware how the Shockleys' story changed and what their incentives at trial now were.[14] Take, for example, the Shockleys' opening

_____

[14] On the morning of trial, the circuit court explained:

There is no doubt in this case that the posture of the intervening plaintiffs has changed as a result of the

statement where they specifically argued that neither RSM nor Curtis Mallet committed intentional wrongdoing. The court reasonably determined that admission of the fact of settlement into evidence went straight to the credibility and potential bias of the Shockleys' witnesses, such as Sandy and Terry Shockley.

¶27 This is not the first time we have affirmed a circuit court's decision to admit the fact of settlement into evidence due to witness bias. In Hareng v. Blanke, the plaintiff initially sued four defendants. 90 Wis. 2d 158, 162, 279 N.W.2d 437 (1979). She settled with two of the four before trial. Id. At trial, counsel for one of the remaining defendants asked the plaintiff why one of the settled defendants was no longer a party. Id. at 167. The circuit court admitted the evidence despite an objection. Id. We affirmed this decision, reasoning that the evidence was admissible to show witness prejudice or bias because the plaintiff "had a financial interest in playing down the negligence of [the settled defendant] and emphasizing that of [the remaining defendants]." Id. at 168. So too here.

---

Pierringer settlement. Instead of having the burden of proof and actively looking to prove the case against the settling parties, they have settled those claims and are now playing a defense on those claims and will be, no doubt, arguing for a lesser percentage of causal negligence on the part of these settled parties. That is clearly a change in posture.

14

¶28 Moreover, the circuit court did not just permit the evidence without restriction. Before it was presented to the jury, the court gave a special instruction to use the settlement evidence only for credibility purposes and not as proof of fault or damages.[15] That limiting instruction added a protective layer to ensure the statutory exception requiring an acceptable purpose was complied with. Our law presumes the jury followed this instruction. See State v. Hurley, 2015 WI 35, ¶90, 361 Wis. 2d 529, 861 N.W.2d 174.

¶29 Even given our conclusion, we reiterate as we did in Morden that this statutory exception should not be expansively construed. 235 Wis. 2d 325, ¶85. Circuit courts should exercise the utmost caution in determining whether to admit settlement evidence under Wis. Stat. § 904.08. See Morden, 235 Wis. 2d 325, ¶85 ([T]he "Judicial Council Committee's Note to Rule 904.08 cites cases that 'admonish trial courts to be cautious in determining admissibility.'" (quoting another source)). Our holding today should not be taken by circuit

---

[15] The court instructed the jury that it,

must not consider this evidence about the settlements as evidence of the truth of the claims against those defendants. You may consider this evidence only to the extent that you believe it may bear on the credibility of the testimony of any witness including the plaintiffs and the settling parties. Any award of damages to any plaintiff must be made without taking into account any amounts the plaintiff may have received as a result of that settlement and any determination of percentages of fault attributed to any party must be made without regard to that settlement.

courts as a license to admit all, or even most, settlement evidence.  After all, the statute merely permits, but does not require, admission under certain circumstances.  Id., ¶82.

¶30  In conclusion, the circuit court did not erroneously exercise its discretion when it determined that witness bias was a significant risk in light of the dramatically altered posture of this case following settlement with two central tortfeasors. It supported this limited admission of the fact of settlement with a cautionary and clarifying instruction to the jury.  Based on the unique facts of this case, we hold the circuit court did not erroneously exercise its discretion by admitting the fact of settlement into evidence.

B.  Discussion of Settlement Evidence at Closing Arguments

¶31  The Shockleys also fault the circuit court for permitting Murphy Desmond to argue during its closing argument over their objection that the settlement evidence effectively disproved the Shockleys' claims.  They contend this error warrants a new trial.  While we agree the argument crossed the line, we conclude the circuit court did not erroneously exercise its discretion in denying the Shockleys' motion for a new trial.

1.  Murphy Desmond's Argument Was Improper

¶32  As already explained, Wis. Stat. § 904.08 prohibits parties from using settlement evidence to "prove liability for or invalidity of [a] claim or its amount."  Consistent with the circuit court's instruction, Murphy Desmond's closing argument

16

addressed the Shockley's credibility due to their settlement with other tortfeasors and consequent shift in position. However, we agree with the Shockleys that counsel for Murphy Desmond strayed at one point when he said: "Even though everything that [the Shockleys] alleged against Curtis Mallet has been proven. Even though the settlement, in my opinion, is an acknowledgment that they've been proven." This statement appears aimed at liability rather than credibility. In effect, counsel seemed to claim that the Shockleys' allegations against RSM and Curtis Mallet had already been proven by virtue of the settlement and, therefore, Murphy Desmond was not liable.[16] While we grant circuit courts considerable discretion in "determining the propriety of [a closing] argument,"[17] this crossed the line. The circuit court erroneously exercised its discretion when it permitted counsel's comment, which ran counter to its prior evidentiary ruling and instruction to the jury. That said, we still must determine whether the error warranted a new trial.

---

[16] Counsel's statement is similar to an argument made in a Delaware case, Atwell v. RHIS, Inc., where the non-settled defendant remarked in closing that the settled defendant "fell on the sword." 974 A.2d 148, 150 (Del. 2009). The Delaware Supreme Court observed that the comment "had the 'purpose of persuading the jury that the persons to blame for the accident had already admitted liability, raising the question that the plaintiff's claim against [the nonsettling defendant] might be invalid . . . .'" Id. at 154 (alteration in original) (quoting another source). We infer likewise in this case.

[17] State v. Burns, 2011 WI 22, ¶48, 332 Wis. 2d 730, 798 N.W.2d 166.

2.  The Improper Argument Did Not Warrant a New Trial

¶33 Following trial, the Shockleys pointed to the error in closing argument and requested a new trial.[18]  A new trial is appropriate when it "'affirmatively appear[s]' that the remarks prejudiced the complaining party." Wausau Underwriters Ins. Co. v. Dane County, 142 Wis. 2d 315, 329, 417 N.W.2d 914 (Ct. App. 1987) (quoting Roeske v. Schmitt, 266 Wis. 2d 557, 572, 64 N.W.2d 394 (1954)).  A circuit court should grant such a motion when it determines that, but for the improper argument, "the verdict reflects a result which in all probability would have been more favorable to the complaining party." Wagner v. Am. Fam. Mut. Ins. Co., 65 Wis. 2d 243, 250, 222 N.W.2d 652 (1974). A circuit court's decision to grant or deny a motion for a new trial is discretionary; we reverse only if the court erroneously exercised its discretion. Id. at 249.

¶34 The circuit court denied the Shockleys' request for a new trial because, in its view, the error was harmless considering the court's jury instruction and the multiple days of testimony supporting the jury's ultimate finding.  This was a decision a reasonable judge could reach supported by the record and the relevant law.  Murphy Desmond's improper comment

---

[18] Murphy Desmond contends the Shockleys forfeited this argument because they failed to move for a mistrial at the time of the error and only did so in their post-trial motion.  The Shockleys respond that they did not need to move for a mistrial because their objection was overruled.  We need not reach this forfeiture argument because we agree with Murphy Desmond that the circuit court did not erroneously exercise its discretion when denying the post-trial motion for a mistrial.

amounted to a single dark cloud on an otherwise sunny day. The statement comprised two sentences in almost 80 pages of closing argument transcript. Following the Shockleys' objection, counsel for Murphy Desmond backed away from any improper use of the evidence and emphasized that the settlement wasn't the "most important issue in this case."

¶35 Moreover, the circuit court specifically instructed the jury that it could only use the settlement evidence for credibility purposes, and not as proof of fault or damages. As we've stressed many times before: "We assume that 'a properly given admonitory instruction is followed' and that the 'jury acted according to law.'" State v. Pitsch, 124 Wis. 2d 628, 645 n.8, 369 N.W.2d 711 (1985) (quoting other sources). We see no reason to abandon that presumption here due to one improper statement in a closing argument that was otherwise consistent with the credibility-focused limiting instruction previously given.

¶36 As a final point, this case is as good as any for emphasizing why we afford circuit courts discretion in determining whether to grant a new trial. This litigation spanned 11 years start-to-finish, underscoring its procedural and factual complexity. Trial itself lasted ten days. While a circuit court's decision to deny a motion for a new trial is not bullet-proof, it is right and proper to entrust this judgment call to those most intimately familiar with the case.

¶37 In view of all of this, we hold that the circuit court did not erroneously exercise its discretion when it denied the

19

Shockleys' motion for a new trial based on the improper remark during closing.

### C. Admission of the Superseded Complaint

¶38 Next, the Shockleys argue the circuit court erroneously admitted its prior, superseded complaint. They further contend that the error was not harmless because Murphy Desmond used the original allegations throughout trial to suggest RSM and Curtis Mallet were the true culprits. Murphy Desmond responds that admission of the superseded complaint was not error, but even if it was, it was harmless because it was consistent with the Shockleys' position at trial. Regardless of whether admission of the original complaint was in error, we conclude it was harmless.

¶39 Evidentiary decisions are subject to review for an erroneous exercise of discretion, but "a circuit court's erroneous exercise of discretion does not warrant a new trial if the error was harmless." Weborg v. Jenny, 2012 WI 67, ¶43, 341 Wis. 2d 668, 816 N.W.2d 191. In other words, a new trial should only be granted where the error affected a substantial right of the affected party. Wis. Stat. § 805.18(2); Martindale, 246 Wis. 2d 67, ¶31. The test is the same in both civil and criminal cases: whether "it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" Hannemann v. Boyson, 2005 WI 94, ¶57, 282 Wis. 2d 664, 698 N.W.2d 714 (quoting another source); see Chapman v. California, 386 U.S. 18, 24 (1967).

20

¶40 The alleged prejudice that flowed from admission of the complaint centered on the jury discovering the Shockleys' original allegations against RSM and Curtis Mallet. But the fact of settlement, admitted for a limited purpose as previously explained, accomplished a similar result. The jury already knew the Shockleys originally sued RSM and Curtis Mallet, settled, and then focused their efforts on Murphy Desmond. In other words, neither admission nor Murphy Desmond's use of the superseded pleadings poisoned the well——at least not enough for us to find beyond a reasonable doubt that juror knowledge of the precise allegations in the original complaint contributed to the outcome. Hannemann, 282 Wis. 2d 664, ¶57. Absent this, the Shockleys offer nothing else to suggest their substantial rights were affected. Therefore, admission of the superseded complaint, if erroneous, was harmless.

## D. Indemnity

¶41 Finally, Sandy Shockley and Shockley Holdings contend Murphy Desmond is not entitled to indemnity for its negligence. Indemnity is a question of law we review de novo. Fleming, 131 Wis. 2d at 127. Understanding this issue requires unpacking indemnification, Pierringer releases, and how our decision in Fleming developed the relationship between the two.

¶42 "Indemnification is a vehicle by which one party or defendant to a lawsuit attempts to shift the entire responsibility for a loss or injury to another party." Artisan & Truckers Cas. Co. v. Thorson, 2012 WI App 17, ¶27, 339

21

Wis. 2d 346, 810 N.W.2d 825 (quoting another source). The point "is to ensure that the losses are borne by the party responsible for the damages." Id.

¶43 Pierringer releases are settlement agreements between a plaintiff and some, but not all, defendants in a case. See Teske v. Wilson Mut. Ins. Co., 2019 WI 62, ¶11 n.6, 387 Wis. 2d 213, 928 N.W.2d 555; Pierringer v. Hoger, 21 Wis. 2d 182, 184-85, 124 N.W.2d 106 (1963). A Pierringer release satisfies "that portion of the plaintiff's cause of action for which the settling joint tortfeasor is responsible, while at the same time reserving the balance of the plaintiff's cause of action against a nonsettling joint tortfeasor." Imark Indus., Inc. v. Arthur Young & Co., 148 Wis. 2d 605, 621, 436 N.W.2d 311 (1989). In Pierringer, we held that such releases impute onto the settling plaintiff any liability in contribution the settled defendants may owe to the non-settled defendants. 21 Wis. 2d at 188-89. That is, any obligation the settling party may have to pay its proportionate share of the liability is extinguished by virtue of the release and rests with the plaintiff. Id.

¶44 Now we turn to our decision in Fleming. Prior to that case, we had held that those guilty of intentional misconduct are not entitled to contribution from parties engaging in negligent conduct. See Jacobs v. Gen. Accident Fire & Life Assurance Corp., 14 Wis. 2d 1, 5, 109 N.W.2d 462 (1961); Zurn v. Whatley, 213 Wis. 365, 372, 251 N.W. 435 (1933). In Fleming, we extended this line of reasoning and held that a negligent

22

tortfeasor has a right to indemnification from an intentional joint tortfeasor. 131 Wis. 2d at 130. We reasoned that the full responsibility for the loss should be placed on the intentional tortfeasor because doing so would deter conduct "society considers to be substantially more egregious than negligence." Id. Fleming further held that a Pierringer release imputes onto the plaintiff any indemnity the settled defendants owe the non-settled defendants. Id. at 131. In other words, the plaintiff who executes a Pierringer release effectively stands in the shoes of the settled defendants. So if the non-settled defendants are entitled to indemnity from the settled defendants, the responsibility for the loss shifts from the settled defendants to the plaintiff.[19]

¶45 Here's how all of this works in this case. The jury found Murphy Desmond negligent, so it is entitled to indemnification from liability that is joint with any intentional tortfeasors. The jury also found that RSM and Curtis Mallet committed intentional torts. Therefore, under Fleming, RSM and Curtis Mallet bear the full responsibility of any joint liability arising out of their intentional conduct, including the negligent conduct by Murphy Desmond. But both RSM and Curtis Mallet signed a Pierringer release with the Shockleys. That means that, per Fleming, any indemnity RSM and

---

[19] We adopted this rule in the interest of judicial economy——namely, it would be inefficient to order a judgment against a settled defendant only to have the plaintiff satisfy it himself. Fleming v. Thresherman's Mut. Ins. Co., 131 Wis. 2d 123, 131, 388 N.W.2d 908 (1986).

Curtis Mallet owe Murphy Desmond is imputed onto Sandy Shockley and Shockley Holdings. In short, so long as the liability is joint, Murphy Desmond is entitled to indemnification from RSM and Curtis Mallet. But Sandy Shockley and Shockley Holdings, by virtue of the Pierringer release, now stand in the shoes of RSM and Curtis Mallet. So Murphy Desmond owes nothing further to them.

¶46 Understanding this, Sandy Shockley and Shockley Holdings argue Fleming's framework does not apply here because Murphy Desmond's negligence was not attributable to RSM and Curtis Mallet's intentional misrepresentations. In other words, they argue the malfeasance here was not wholly joint, pointing to our decision in Imark as analogous to the facts in this case. 148 Wis. 2d 605.

¶47 In Imark, a corporation sued an accounting firm for negligent misrepresentation based on several audits. Id. at 613. That accounting firm then sued three corporate officers for intentional misrepresentations related to the audits. Id. at 614. The jury allocated the negligence among the parties and also found that the corporate officers committed intentional misrepresentations. Id. at 614-15. We observed that the record contained specific evidence of negligence by the firm that was "unaffected" by any intentional misrepresentations by the corporate officers. Id. at 624. So we remanded the case for the jury to determine what portion of the firm's liability was attributable to its reliance on the intentional misrepresentations, and what was unattributable. Id. at 628-29.

24

Sandy Shockley and Shockley Holdings argue a remand is similarly required here because the jury did not determine what portion of Murphy Desmond's negligence was unattributable to RSM and Curtis Mallet's intentional misrepresentations.

¶48 Unlike in Imark, the record before us reveals no such ambiguity. The circuit court correctly observed that the Shockleys never alleged——nor proved at trial——that Murphy Desmond had liability separate from RSM and Curtis Mallet. In fact, Sandy Shockley and Shockley Holdings have failed to point to any such evidence before the circuit court, the court of appeals, or before us. We simply see nothing in the record that shows anything other than joint liability.

¶49 Therefore, the general rule under Fleming applies. Intentional tortfeasors RSM and Curtis Mallet must indemnify Murphy Desmond due to their joint liability. But the Pierringer release signed with RSM and Curtis Mallet imputes the indemnity owed by them to the plaintiffs——including Sandy Shockley and Shockley Holdings.[20] Fleming, 131 Wis. 2d at 131. Thus, even though the jury found Murphy Desmond negligent, it owes no damages to Sandy Shockley and Shockley Holdings; the circuit court correctly dismissed their claims against Murphy Desmond.

---

[20] Sandy Shockley and Shockley Holdings argue in passing that this rule is "unworkable and unjust," pointing to several jurisdictions that have abandoned it. But they "take no position" on whether the rule should in fact be abandoned. Absent an argument asking to revisit the rule, we decline to do so.

### III. CONCLUSION

¶50 In the end, we find the Shockleys' four arguments unavailing. We hold the circuit court properly admitted the fact of settlement into evidence for a limited purpose and denied the Shockleys' motion for a new trial based on the improper remark during closing. Regarding the superseded complaint, we hold that, even if its admission was erroneous, it was harmless. Finally, we hold that the circuit court correctly concluded Murphy Desmond is entitled to indemnification and therefore owes no damages to Sandy Shockley and Shockley Holdings.

*By the Court.*—The decision of the court of appeals is affirmed.

¶51 ANNETTE KINGSLAND ZIEGLER, C.J. *(dissenting)*. Wisconsin has a strong public policy encouraging litigants to voluntarily resolve their disputes through settlement agreements rather than the judicial process. This policy is furthered by Wis. Stat. § 904.08, which prohibits the admission of settlement evidence to prove a claim or its amount, with some narrow exceptions for other purposes. Because the majority's interpretation of these exceptions swallows the rule and creates a back door for litigants to introduce evidence of Pierringer[1] releases for the prohibited purposes, I respectfully dissent.

¶52 The circuit court in this case erroneously permitted Murphy Desmond to introduce settlement evidence as proof that the settling defendants were the "true culprits" and as proof that the Shockleys had already been fully compensated for their losses. Murphy Desmond claims it introduced this evidence for a different purpose——to show that the settlement caused the Shockleys to have a "significant change in posture." But such an exception would apply to every Pierringer release, swallowing the rule that settlement agreements are generally inadmissible and opening a back door for litigants to introduce settlement evidence for an improper purpose, as occurred here. This error compounded when the circuit court erroneously permitted defense counsel to explicitly argue the settlement evidence was proof that the settling defendants were at fault rather than Murphy Desmond. At that point, the settlement evidence and improper

---

[1] Pierringer v. Hoger, 21 Wis. 2d 182, 124 N.W.2d 106 (1963).

argument so infected the trial that no jury instruction could save it. I would reverse the court of appeals and remand for a new trial.

## I. FACTUAL BACKGROUND

¶53 The majority vastly undersells the extent to which Murphy Desmond's counsel exploited the settlement evidence at trial. Defense counsel first discussed that evidence at length near the beginning of his opening statement:

> The first question is what are the factual questions that need to be resolved in this case? And the first and single most important factual question that needs to be resolved is this: Who did the Shockleys and the other Shockley Communications Corporation shareholders really look to for advice on the tax risks and tax advantages of this transaction?
>
> Closely related to that, and I think important to that, is the question that what does it mean that I'm now going to tell you that at the outset of this case the Shockleys not only sued my clients but they sued RSM McGladrey and they sued Curtis Mallet.
>
> And that's the first time you heard that, because it's a fact that they want to run away from as far as they can, as fast as they can. They not only sued RSM McGladrey, Curtis Mallet, and the individuals who were associated with them, they not only alleged that, as they have alleged against us, that they were negligent in providing professional services to them, but they specifically alleged that each of those persons and entities defrauded them. That they lied to them and misrepresented things to them. And that in specific reliance upon the lies, the frauds, the misrepresentations that those two defendants made, they entered into this transaction.
>
> And after they made those allegations, they've now withdrawn them. They filed a new Complaint, a new paper to start this lawsuit, to continue this lawsuit, which is what I would like to call the make-pretend document. It's the document that pretends that --

2

[Plaintiff's counsel objects as argumentative and is overruled.]

[Plaintiff's counsel] didn't tell you that, but they sued these other people, the ones they say now they didn't rely on, the ones they say were just sort of on the sideline, they sued them. They claimed they defrauded them. Not that they were careless but they frauded them. Then they settled with them. And now the lawsuit they obviously want to present to you in this search for the truth we have here today is a lawsuit in which they now claim it's my clients who did this.

¶54 Defense counsel later cross-examined Sandy Shockley and mentioned the settlement 13 times. He later asked Terry Shockley,

Your wife testified when she was on the stand last week that as a result of the settlement that was made with the other defendants, you ended up after expenses and so on out of the $13 million, you got between $6 and $8 million being available from that settlement.

¶55 Defense counsel also asked Jenny Johnson Ware, the Shockleys' lawyer from the IRS litigation, "How much money do you understand the Shockleys have sitting in a bank account somewhere as a result of the settlement with the other defendants." He further asked if it was true that "the Shockleys have only paid [the IRS] $2 million" "[e]ven though they, according to Mrs. Shockley's testimony, have several millions of dollars left over from the settlement they had from the other defendants."

¶56 Finally, defense counsel returned to the settlement and further emphasized its significance during closing argument:

And [plaintiff's counsel] should be blushing, because he's the one who got up at the beginning of this trial and talked about this case as if they had never sued -- they had never accused McGladrey and Curtis

3

Mallet of doing anything wrong. Talked about this trial as if there was no issue in this case whatsoever about whether McGladrey and Curtis Mallet had done anything wrong. Didn't tell you that they'd settled with Curtis Mallet and McGladrey. <u>Didn't tell you they got enormous amounts of money because they're the true culprits here, of course</u>. And didn't tell you that because they settled with them. His clients had night and day changed their allegations to drop all the allegations against those people and now take the posture that he's taking now, that this is, essentially, all our fault. Even though everything that his clients alleged against Curtis Mallet has been proven. Even though <u>the settlement, in my opinion, is an acknowledgment that they've been proven</u>.

(emphases added).

¶57 The fact of the matter is Murphy Desmond heavily relied on the settlement evidence throughout the trial. It was one of Murphy Desmond's most "important" pieces of evidence for resolving the question, "Who did the Shockleys . . . really look to for advice . . . ?" The majority simply fails to grasp the extent to which the settlement pervaded the trial.

## II. STANDARD OF REVIEW

¶58 Though reviewing an evidentiary decision, we nonetheless review the circuit court's application of a statute. "The interpretation and application of a statute presents a question of law that this court decides independently of the circuit court," and "[i]t follows that this court decides whether the circuit court applied the proper legal standard under Wis. Stat. § [904.08] in the first instance independently." <u>Seifert v. Balink</u>, 2017 WI 2, ¶89, 372 Wis. 2d 525, 888 N.W.2d 816.

4

¶59 "We [also] review a circuit court's decision to deny a motion for a new trial under an erroneous exercise of discretion standard." Id., ¶139.

### III. ANALYSIS

#### A. Admission of Settlement Evidence.

¶60 Under Wis. Stat. § 904.08, settlement evidence "is not admissible to prove liability for or invalidity of the claim or its amount." This rule reflects "concerns that such evidence has marginal probative value that is categorically outweighed by the public policy of encouraging the settlement of disputes short of trial." 7 Daniel Blinka, Wisconsin Practice Series: Wisconsin Evidence § 408.1 (4th ed. 2022). It is for this reason we have described the introduction of settlement evidence——particularly in cases of multi-defendant litigation—— as "a potentially incendiary device, one that could lead the jury to conclude that the plaintiffs have received ample compensation from the real malefactors and no further recovery is necessary." Morden v. Continental AG, 2000 WI 51, ¶99 n.15, 235 Wis. 2d 325, 611 N.W.2d 659.

¶61 Our statutes do provide an exception to this general prohibition on settlement evidence, permitting circuit courts to "not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness." Wis. Stat. § 904.08. However, this exception must be narrowly construed and applied cautiously. For example, we concluded in Johnson v. Heinz, 73 Wis. 2d 286, 243 N.W.2d 815 (1976), that the exception does not "allow[] testimony concerning details of

5

the compromise settlement . . . for the purpose of showing bias or prejudice . . . . To allow the admission of details including the amount of settlement as an exception to the rule would defeat the purpose of the rule and render it meaningless." Id. at 300.

¶62 The majority erroneously endorses the interpretation of Wis. Stat. § 904.08 expressed in Morden, which permits admission of settlement evidence where "the posture of a settling party was significantly different as a result of the settlement." Morden, 235 Wis. 2d 325, ¶83. Not only does this exception have no basis in the statutory text, but it swallows § 904.08's general exclusion of settlement evidence in all cases involving a Pierringer release.

¶63 A Pierringer release is a kind of settlement in cases involving multiple defendants. It "operates as a satisfaction of that portion of the plaintiff's cause of action for which the settling joint tortfeasor is responsible, while at the same time reserving the balance of the plaintiff's cause of action against a nonsettling tortfeasor." Teske v. Wilson Mut. Ins. Co., 2019 WI 62, ¶11 n.6, 387 Wis. 2d 213, 928 N.W.2d 555 (quoting Imark Indus., Inc. v. Arthur Young & Co., 148 Wis. 2d 605, 621, 436 N.W.2d 311 (1989)). Such agreements permit settling defendants to terminate their involvement in litigation completely because Pierringer releases "provide[] that the plaintiff 'will assume or satisfy that portion of the liability that is determined to be the responsibility of the settling joint tortfeasor.'" Id. (quoting Imark Indus., 148 Wis. 2d at 621). This ensures

6

settling defendants will not have to litigate against nonsettling defendants to determine contribution. That is left to the plaintiff and the nonsettling defendants. Pierringer releases are therefore attractive because they end all involvement in litigation for settling defendants.

¶64 With regard to Pierringer releases, the "significant change in posture" exception swallows the rule. Every Pierringer release substantially changes the plaintiff's posture. The plaintiff takes on the responsibility of arguing that the nonsettling defendants are not entitled to contribution in every single case involving a Pierringer release. Even the circuit court in this case recognized what is essentially a per se rule of admissibility in settlement cases: "That's the whole point of a Pierringer. The burden shifts." By expansively construing the exception to include a "significant change in posture," the majority makes evidence of Pierringer releases generally admissible and removes plaintiffs' incentives to settle. The majority therefore "defeat[s] the purpose of the rule and render[s] it meaningless." Johnson, 73 Wis. 2d at 300.

¶65 Other courts too have recognized the dangers of broadly construing the exception to the exclusion of settlement evidence in this context. Rule 408 of the Federal Rules of Evidence, similar to our own statute, prohibits admission of settlement evidence, except "[t]he court may admit this evidence for another purpose, such as proving a witness's bias or prejudice." As one court observed, "Despite such a sweeping statement, care should be taken that an indiscriminate and

7

mechanistic application of this 'exception' to Rule 408, does not result in undermining the rule's public policy objective . . . ." <u>Young v. Verson Allsteel Press Co.</u>, 539 F. Supp. 193, 196 (E.D. Pa. 1982) (quoting 2 J. Weinstein & M. Berger, <u>Weinstein's Evidence</u> § 408(05) (1978)) (concluding an argument that "introducing evidence of settlement is not to prove the validity or invalidity of the claim or its amount, . . . even if true, would not signal an end to our inquiry"). It is true that "state courts have charted various courses in the area, ranging from, complete disclosure of the fact of settlement with a joint tortfeasor and the amount, to prohibition of any disclosure of such facts." <u>Id.</u> However, especially in light of comparative negligence doctrine, "the recent trend among the states in interpreting their respective interrelated comparative negligence and joint tortfeasor contribution statutes is to place any evidence of a plaintiff's settlement with a joint tortfeasor beyond the jury's grasp." <u>Id.</u> (collecting cases).

¶66 Under more appropriately exacting scrutiny, it is clear that the evidence of the Shockleys' settlement agreement was improperly admitted. The circuit court explained that it was "admitting [the settlement evidence] on the issues of the credibility of plaintiffs and their overall posture in the lawsuit." Though questionable whether the court should have admitted the settlement evidence on the issue of credibility, admitting it to show the Shockleys' "overall posture" was erroneous.

8

¶67 By discussing how the settlement evidence affected the "posture" of the plaintiffs, defense counsel used the settlement evidence both to "prove liability for . . . the claim [and] its amount." Wis. Stat. § 904.08. In opening argument, defense counsel referred to the settlement evidence as "important" to deciding "the first and single most important factual question," which was, "Who did the Skockleys . . . really look to for advice on the tax risks and tax advantages of this transaction?" Not only did defense counsel use this "significant change in posture" exception to prove that the Shockleys actually relied on the settling defendants, but he also used it to prove the amount of the claims by demonstrating that the Shockleys had already been fully compensated for their damages.[2] He asked several witnesses about the amount of settlement, noting that the Shockleys "have several millions of dollars left over from the settlement." All of this was accomplished under the guise of demonstrating the Shockleys' "significant change in posture," which the statute prohibits.

¶68 This case illustrates that the judicially-created "significant change in posture" exception to Wis. Stat. § 904.08 is a loophole permitting litigants to present settlement evidence for the very purposes the rule explicitly prohibits. Such an exception to the general rule that settlement evidence

---

[2] The majority repeatedly states that it was the Shockleys who initially introduced the settlement amount. Majority op., ¶¶16, 26. The majority appears to confuse that initial introduction with Murphy Desmond's later introducing it to prove the amount of the Shockleys' claim, which Wis. Stat. § 904.08 explicitly prohibits.

9

is inadmissible swallows the rule, making evidence of Pierringer releases admissible in every instance. The circuit court erroneously exercised its discretion by admitting the settlement evidence under this exception.

### B. Improper Argument

¶69 Even if the circuit court did properly admit the settlement evidence——which it did not——the circuit court erroneously exercised its discretion by not granting a new trial.

¶70 As an initial matter, defense counsel's remarks during closing argument were improper, and the circuit court erroneously exercised its discretion by overruling the objection to those remarks. Defense counsel argued to the jury that plaintiffs' counsel "[d]idn't tell you that they'd settled with Curtis Mallet and McGladrey. Didn't tell you they got enormous amounts of money because they're the true culprits here." (emphasis added). He even said that the settlement "is an acknowledgment" that "everything [the Shockleys] alleged against Curtis Mallet has been proven."

¶71 It is hard to imagine a more direct way defense counsel could have argued that the settlement "prove[d] liability or invalidity of the claim or its amount." Wis. Stat. § 904.08. Yet, the circuit court found this line of argument proper because the circuit court "thought his argument wasn't that it was evidence of what their liability is. It was evidence of what you thought their liability was. And that's the whole point is the credibility of the plaintiffs' case."

10

This explanation demonstrates that the circuit court fundamentally misunderstood both Murphy Desmond's case and the rules of Wis. Stat. § 904.08. The circuit court erroneously exercised its discretion by permitting this line of argument.

¶72 In any event, the majority concludes the circuit court properly denied the request for a new trial because the "improper comment amounted to a single dark cloud on an otherwise sunny day." Majority op., ¶34. Not so. The improper comment was instead the last jolting lightning bolt at the end of a long storm. The circuit court and the majority examined the improper comment from the perspective of a person who listened to the closing arguments and nothing else. But the jury sat through a ten-day-long trial, during which defense counsel referenced the settlement agreement relentlessly. He promised the jury during opening statements that the settlement evidence would be "important" for determining who was really at fault, and he brought it full circle in closing argument. In context, the majority's characterization of the comment as a "single dark cloud" is purely fanciful.

¶73 The circuit court's instructions to the jury do not change the fact that this improper line of argument prejudiced the Shockleys. It is true that "[w]hen a circuit court gives a proper cautionary instruction, appellate courts presume that the jury followed that instruction and acted in accordance with the law." State v. Gary M.B., 2004 WI 33, ¶33, 270 Wis. 2d 62, 676 N.W.2d 475. However, "in a case where there is a good reason to believe that injury has been done to the adverse party by the

introduction of the improper testimony [or argument], notwithstanding the instruction of the court to disregard it, [] a new trial should be ordered." State Bank of Wis. v. Dutton, 11 Wis. 371, 373-74 (1860).

> [T]here may be cases in which the [improper evidence or argument] which has been introduced is of a nature so well adapted to make such an impression on the minds of the jury, that instructions to disregard it cannot well have their legitimate effect; and there may be cases where, after the admission of such [evidence or argument], the result of the trial indicates that it must have had an improper operation.

Id. at 373. This is one such case. Defense counsel made the settlement agreement a central part of the case from the get-go, referencing it wherever possible and intimating to the jury that the settling defendants were at fault. Given this steady drumbeat throughout trial, it is unsurprising that the jury found RSM and Curtis Mallet to have a combined amount of negligence six times greater than that of Murphy Desmond. It therefore "'affirmatively appear[s]' that the remarks prejudiced" the Shockleys, and the circuit court erroneously exercised its discretion by not granting a new trial. Seifert, 372 Wis. 2d 525, ¶139 (quoting Wausau Underwriters Ins. Co. v. Dane County, 142 Wis. 2d 315, 329-50, 417 N.W.2d 914 (Ct. App. 1987)).

IV. CONCLUSION

¶74 Parties attempting to resolve their disputes without turning to the judicial process need assurance that those attempts will not later be used against them. This is especially true for plaintiffs entering Pierringer releases in

12

multi-defendant litigation, as they expect to go to trial with other nonsettling defendants. The majority reduces the assurance in Wis. Stat. § 904.08 to nothing more than a parchment barrier, permitting settlement evidence in this case to be admitted for the very purposes the statute prohibits under the guise of demonstrating a "significant change in posture." The majority compounds this error by minimizing the improper comments during closing argument and ignoring their context.

¶75  For these reasons, I respectfully dissent.

¶76  I am authorized to state that Justices PATIENCE DRAKE ROGGENSACK and REBECCA GRASSL BRADLEY join this dissent.