COURT OF APPEALS
DECISION
DATED AND FILED

September 10, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP475-CR**

Cir. Ct. No. **2021CF633**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

JUSTIN J. HODGKINS,

    DEFENDANT-APPELLANT.

        APPEAL from a judgment and an order of the circuit court for Waukesha County: J. ARTHUR MELVIN, III, Judge. *Affirmed*.

        Before Neubauer, P.J., Gundrum, and Lazar, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

    ¶1    PER CURIAM. Justin J. Hodgkins appeals from a judgment of conviction for burglary and an order denying his postconviction motion. He

contends the trial court erroneously exercised its discretion in receiving two items into evidence at his trial: (1) a report from a database that tracks sales of items to pawn shops; and (2) surveillance video from a pawn shop showing Hodgkins selling several power tools that were similar in appearance to those reported missing after the burglary. Hodgkins argues the State failed to properly authenticate either piece of evidence. Because the court did not erroneously exercise its discretion in determining that the State had introduced sufficient evidence to authenticate the report and video, we affirm.

## BACKGROUND

¶2 On January 30, 2021, the owner of a house undergoing renovations in Waukesha reported to police that it had been burglarized. The owner found the front door unlocked, a window broken, and multiple tools that were being used in the renovations missing from the house and garage. Officer Richard Young of the Waukesha Police Department was dispatched to the scene. Young's investigation led him to focus on one of the owner's employees, "Justin," who had been working at the house, as a suspect. The owner subsequently gave Young the employee's full name, Justin Hodgkins.

¶3 As part of his investigation, Young searched the Northeastern Wisconsin Property Reporting System (NEWPRS), a database that contains information about sales to pawnshops, for sales associated with Hodgkins that occurred in the days before the burglary was reported. Young found a transaction that involved two nail guns that were sold on January 30 at Pawn America in West Allis. Young gave information about the sale to the detective bureau for follow up.

2

¶4      Detective Benjamin Stern met with the owners of Pawn America who provided a surveillance video of the transaction as well as paperwork documenting the sale of the nail guns on January 30.  Stern also learned that Hodgkins had tried to sell two other nail guns to Pawn America, which refused to buy them because they looked new and Hodgkins did not have receipts for them.  Stern obtained photographs of the pawned items and showed them to the owner, who indicated that they appeared to be his property.  After Hodgkins failed to appear for several scheduled meetings with Stern, the State charged him with one count of burglary as a repeater, contrary to WIS. STAT. § 943.10(1m)(a) (2023-24).[1]

¶5      Hodgkins pled not guilty, and the case proceeded to trial.  Moments before opening statements began, Hodgkins moved to exclude the NEWPRS report and the surveillance video on multiple grounds, including that the State had not identified a witness who could authenticate them.  The State responded by outlining the evidence it planned to present to authenticate the evidence.  The trial court denied Hodgkins' motion, stating that it "w[ould] allow the video to be played and the [NEWPRS report] to be discussed" and would address any "foundational issues" related to those items if they arose during the trial.

¶6      At trial, Young and Stern testified about their respective involvement in investigating the burglary.  Young testified that burglars "often resell the items that they steal," either online or at a pawn shop.  He described the NEWPRS database as a resource for "pawn shops and places as such that buy items from people to document the items in order for law enforcement to be able to review them."  Young confirmed that he had access to the database in his

---

[1]  All references to the Wisconsin Statutes are to the 2023-24 version.

3

capacity as a police officer and described how he ran a search in the database for transactions involving Hodgkins that occurred around the time of the burglary and "located two [nail guns] that were similar to the ones that [the owner] had stated he was missing from his home." Young also testified that "a printout, … like an invoice of the items that were pawned" can be created from the search. The State showed him the NEWPRS report, which Young described as "that transaction report or … kind of like an invoice that [he] located of the items pawned by Mr. Hodgkins." He identified the date of the transaction, which appeared in the corner of the form, as January 30, and Hodgkins as the seller listed on the form. The trial court received the report in evidence over Hodgkins' objection.

¶7     Stern testified about his visit to the pawn shop, where he met with the owners, obtained surveillance video of the transaction documented in the NEWPRS report, and recovered the two nail guns. Stern testified that he reviewed the video and confirmed that the time stamp on the video matched the date and time of the transaction at issue. The court overruled Hodgkins' objections and admitted the video into evidence. Segments of the video depicting Hodgkins at one of Pawn America's "teller bays" were played for the jury, again over Hodgkins' objection that the segments had not been sufficiently authenticated.

¶8     Shortly before closing arguments, Hodgkins repeated his objection to the surveillance video and the NEWPRS report on the ground that "someone from the pawn shop" had not authenticated them. The trial court again disagreed, stating that a "proper foundation" had been laid for the video because Stern had collected it "in due course" and "testified as to what it was a depiction of [and] where it was obtained from." As to the NEWPRS report, the court stated that "[i]t was represented as information that was pulled from a data system that [Young] has access to" and he "talked through how that information was first alerted and

then how it was used[.]" This testimony was sufficient, in the court's view, for the report to be admitted. The jury found Hodgkins guilty.

¶9 Hodgkins filed a postconviction motion seeking a new trial on the ground that the surveillance video and NEWPRS report had not been properly authenticated. He argued that under WIS. STAT. § 908.03(6), the State "had to authenticate the documentation by the testimony of the custodian of the records or his or her designee." The State countered that Stern's testimony and additional circumstantial evidence—the NEWPRS report and evidence that Hodgkins' cell phone was in the vicinity of Pawn America at the date and time of the sale depicted in the video—was sufficient to authenticate the video. Furthermore, the State argued that it had authenticated the NEWPRS report through Young's testimony about the contents of the database and how he searched it. The trial court denied the postconviction motion.

## DISCUSSION

¶10 A trial court's decision to admit evidence is reviewed under the erroneous exercise of discretion standard. ***Allsop Venture Partners III v. Murphy Desmond SC***, 2023 WI 43, ¶23, 407 Wis. 2d 387, 991 N.W.2d 320. Under that standard, our analysis focuses on whether the court "examined the facts of record, applied a proper legal standard, and, using a rational process, reached a reasonable conclusion." ***State v. Pittman***, 174 Wis. 2d 255, 268, 496 N.W.2d 74 (1993) (citation omitted). "[W]e look not to see if we agree with the [trial] court's determination, but rather whether the trial court exercised its discretion in accordance with accepted legal standards and … the facts of record." ***State v. Huntington***, 216 Wis. 2d 671, 680-81, 575 N.W.2d 268 (1998) (citation omitted).

"If we can discern a reasonable basis for its evidentiary decision, then the [trial] court has not committed an erroneous exercise of discretion." *Id.* at 681.

¶11     Authentication of evidence is governed by WIS. STAT. § 909.01, which states that "[t]he requirements of authentication or identification as a condition precedent to admissibility are satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." WISCONSIN STAT. § 909.015 sets forth examples of how evidence may be authenticated, including as relevant here by "[t]estimony of a witness with knowledge that a matter is what it is claimed to be" and "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." Sec. 909.015(1), (4). In summary, "authentication requires that a [trial] court conclude, within its discretion, that the finder of fact could reasonably determine that the evidence sought to be admitted is what its proponent says it is." *State v. Burch*, 2021 WI 68, ¶32, 398 Wis. 2d 1, 961 N.W.2d 314.

¶12     The trial court did not erroneously exercise its discretion when it determined that the State had presented sufficient evidence to authenticate the NEWPRS report and the surveillance video. Our review of the court's ruling indicates that the court applied the proper legal standard for authentication, considered the testimony from Young and Stern and other relevant evidence, and reasonably concluded that the jury could find that each piece of evidence was what the State claimed it to be.

¶13     With respect to the NEWPRS report, the trial court looked to Young's testimony about the database and how he searched it for transactions involving Hodgkins near the date the burglary was reported. Young testified that pawn shops are required to log transactions into the NEWPRS or similar databases

so that law enforcement can learn of those transactions if they involve suspected stolen property. Young explained how he searched the database to determine if Hodgkins had sold any items near in time to the burglary and how he generated a report from the database of the January 30 transaction at Pawn America. From this testimony, the court reasonably determined that the jury could find the NEWPRS report to be the document Young described it to be. *See State v. Giacomantonio*, 2016 WI App 62, ¶21, 371 Wis. 2d 452, 885 N.W.2d 394 (detective's testimony that screen shots of text messages he viewed on victim's cell phone accurately depicted the messages was sufficient to authenticate them).

¶14 We reach the same conclusion with respect to the surveillance video. The State contended that the video showed Hodgkins selling two nail guns at Pawn America on January 30. Stern testified that he visited Pawn America in person and obtained the video by telling the shop owners the date and time of the transaction at issue. He testified further that he recovered the nail guns at the pawn shop. Just before the video was played, Stern testified that he had reviewed it and that the date and time stamp on the video matched the date and time he had requested. Stern later confirmed that the location shown in the video was a teller bay at Pawn America and that Hodgkins was the customer shown in the video. We agree with the trial court that this testimony was sufficient for the jury to find that the video showed Hodgkins selling the nail guns at Pawn America on January 30.

¶15 Hodgkins' arguments do not persuade us that the trial court erroneously exercised its discretion in admitting either piece of evidence. He contends that the report and video are business records under Wis. Stat. § 908.03(6) and thus required testimony from a "custodian or other qualified witness" to authenticate. Young's and Stern's testimony was not sufficient, in

Hodgkins' view, because the officers were merely recipients of the evidence, not custodians.

¶16 We disagree. Authentication is governed by WIS. STAT. § 909.01, not WIS. STAT. § 908.03(6). The latter provision is a hearsay exception that applies to "[r]ecords of regularly conducted activity" and exempts such a record from the hearsay prohibition if a "custodian or other qualified witness" testifies that the record was "made at or near the time by, or from information transmitted by, a person with knowledge, all in the course of a regularly conducted activity[.]" Sec. 908.03(6). Section 909.01, in contrast, merely requires "evidence sufficient to support a finding that the matter in question is what its proponent claims" to satisfy "[t]he requirements of authentication or identification as a condition precedent to admissibility[.]" Although testimony from a Pawn America representative may have been sufficient to authenticate the NEWPRS report and the surveillance video, it was not required.

¶17 The trial court did not erroneously exercise its discretion in concluding that the testimony of Young and Stern was sufficient to authenticate the surveillance video and the NEWPRS report. In light of our conclusion, we need not address the State's alternative argument that admission of the evidence, if improper, was harmless error.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.